## IN THE UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

| | |
|---|---|
| In re:<br><br>RWDY, INC.,<br><br>                 Debtor | Chapter 11<br><br>Case No. 22-11308<br><br>HON. JOHN S. HODGE<br>BANKRUPTCY JUDGE |

## EX PARTE MOTION FOR EXAMINATION AND PRODUCTION
## OF DOCUMENTS UNDER BANKRUPTCY RULE 2004

NOW INTO COURT, through undersigned counsel, comes RWDY, INC. (hereinafter called "RWDY"), which requests an order to conduct examinations and require production of documents under Bankruptcy Rule 2004, as follows:

**Jurisdiction and Venue**

1.     The Debtor filed this case under Chapter 11 on December 21, 2022. Document No. 1.

2.     The Debtor remains in possession of its assets and continues to operate and manage its business as a "Debtor-in-Possession" under sections 1107 and 1108 of the Bankruptcy Code.

3.     This Court has jurisdiction to grant the relief sought herein pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). As such, this Court may enter a final order on this matter under 28 U.S.C. § 157(b)(1). Venue for the filing of this Motion is proper under 28 U.S.C. § 1409.

**Statutory Basis for Relief**

4.      The relief sought in this motion is governed by Bankruptcy Rule 2004 which, pursuant to subsection (a) authorizes this court upon the request of a party in interest to order the examination of any entity (defined by 11 U.S.C. § 101(15) and (41) to include, but not be limited to, all individuals and corporations), with the scope of such examination being addressed in paragraph (b) of Rule 2004.

5.      This motion is also governed by Local Rule 2004-1.

**Background**

6.      Paragraph (a) of section 1107 of the Bankruptcy Code reads:

>       (a) Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.

7.      The debtor RWDY is a party in interest. 11 U.S.C. § 1109(b).

8.      Slate Advance has filed a proof of claim in this bankruptcy case, a full, true, and correct copy of which is attached hereto as Exhibit 1. The claim is Claim 19, filed on March 31, 2023, in the amount of $811,500.00.

9.      Claim 19 was signed for Slate Advance by its attorney, Shanna M. Kaminski. The proof of claim provides:

>       I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

>       I declare under penalty of perjury that the foregoing is true and correct.

RWDY shows that Ms. Kaminski must have believed, presumably in good faith, that she had formed a "reasonable belief that the information is true and correct" as shown in the proof of claim based on documents and other information that she would have received from Slate Advance,

2

including its officers, directors, shareholders, managers, members, partners, or other equity owners of Slate Advance, and the accountants, bookkeepers, and other persons who have personal knowledge of the facts upon which the proof of claim was based.

10.     Claim 19 asserts that it is secured by a lien on property described as "Accounts/ Purchased Receipts."

11.     Claim 19 alludes to the basis of perfection of the claimed lien as being "UCC 9−309."

12.     There is no UCC Financing Statement attached to Claim 19.

13.     Documents that are attached to Claim 19 identify the "Merchant's Legal Name" as "RWDY, INC. / PUSHER, LLC."

14.     Documents that are attached to Claim 19 appear to bear an electronic signature of Brian T. Owen as "Owner" and as a guarantor.

15.     RWDY has no evidence or records that it ever received any funds from Slate Advance under the documents that are attached to Claim 19 filed in this case.

**Reasons for Rule 2004 Examination**

16.     Reasons to conduct a rule 2004 examination include, but are not limited to, the following:

A.     RWDY never received any funds from Slate Advance on which its claim is based; and

B.     the factual issues concerning:

(1)     the origin, amount, nature, character, and status of the claim;

(2)     the relationship claimed by Slate Advance with each of RWDY, Brian Owen, and the other entities listed on the documents attached to the aforementioned proof of claim;

3

(3)     the course of dealings or claimed dealings between Slate Advance, Brian Owen, and the other entities listed on the documents attached to the aforementioned proof of claim; and/or

(4)     the relationship, if any, of Slate Advance to any of the other parties who have asserted claims in this case in the nature of the claim asserted by Slate Advance.

17.     Claim 19 is filed by "Slate Advance." RWDY has endeavored to determine who or what Slate Advance is. Is it an individual doing business as Slate Advance? Is it a corporation? Is it a limited liability company? Is it a partnership? The notice of appearance filed by its counsel only provides the name "Slate Advance." *See* <u>Document 48</u>. Slate Advance is somewhat of a mystery. RWDY believes that it may discover substantial additional facts concerning the claim identity of Slate Advance.

18.     RWDY believes that it may discover substantial additional facts concerning the claim asserted by Slate Advance.

19.     RWDY believes that it may discover substantial additional facts concerning the lien claimed by Slate Advance as security for the claim it has asserted.

**Bankruptcy Rule 2004**

20.     Bankruptcy Rule 2004 reads, in pertinent part:

**(a) Examination on Motion.** On motion of any party in interest, the court may order the examination of any entity.

**(b) Scope of Examination.** The examination of an entity under this rule or of the debtor under §343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge. . . .

**(c) Compelling Attendance and Production of Documents or Electronically Stored Information.** The attendance of an entity for examination and for the production of documents or electronically stored information, whether the examination is to be conducted within or without the district in which the case is pending, may be compelled as provided in Rule 9016 for the attendance of a witness at a hearing or trial. As an officer of the court, an attorney may issue and

4

sign a subpoena on behalf of the court where the case is pending if the attorney is admitted to practice in that court.

. . . .

**(e) Mileage.** An entity other than a debtor shall not be required to attend as a witness unless lawful mileage and witness fee for one day's attendance shall be first tendered. . . .

21.     In *In re Correra*, 589 B.R. 76, 107-109; 2018 WL 4027001 (Bankr. N.D.

Tex.2018), the Court explained Rule 2004:

> . . . [A] bankruptcy court "has abundant legal authority to order the retrieval of information concerning a debtor and his estate from persons and entities who are not parties in a bankruptcy case, *i.e.*, persons or entities who have neither filed a voluntary petition under section 301 of the Bankruptcy Code nor filed a proof of claim or interest under section 501 of the Bankruptcy Code.[140] . . .

> By way of background, Bankruptcy Rule 2004 of the Federal Rules of Bankruptcy Procedure is "the basic discovery device in bankruptcy cases."[141] Rule 2004(a) states that "[o]n motion of any party in interest, the court may order the examination of any entity."[142] It has been stated that the scope of a Rule 2004 examination is exceptionally broad and the rule itself is peculiar to bankruptcy law and procedure because it affords few of the procedural safeguards that an examination under Rule 26 of the Federal Rules of Civil Procedure does.[143] "Third parties are subject to examination pursuant to Rule 2004 if they have knowledge of the debtor's affairs."[144]

> Courts tend to be reluctant to allow "escape from a Rule 2004 examination unless the party can show that the examination" would be "oppressive or burdensome."[145] "A rule 2004 exam has been explained as a broad investigation into the financial affairs of the debtor for the purpose of the discovery of assets of the estate and the exposure of fraudulent conduct."[146] The scope of a Rule 2004 examination is "unfettered and broad" and "is commonly recognized as more in the nature of a 'fishing expedition.'"[147] The purpose of the examination is to enable the trustee to discover the nature and extent of the bankruptcy estate. "Discovery under Rule 2004 is broader than that available under the Federal Rules of Civil Procedure."[148] Legitimate goals of Rule 2004 examinations include "discovering assets, examining transactions, and determining whether wrongdoing has occurred."[149]

(Citations in and text of footnotes omitted). Certainly, the Court's abundant legal authority extends

to entities who have filed and signed proofs of claim.

5

22.     In the matter of *In re Flambeaux Gas & Elec. Lights, LLC*, No. 18-11979, 2019 WL 2337098 (Bankr. E.D. La. May 31, 2019) the Hon. Elizabeth W. Magner, U.S. Bankruptcy Judge cited to *In re Correra*, *supra*, and noted that "A Rule 2004 examination "is unfettered and broad and is commonly recognized as more 'in the nature of a fishing expedition."[1]

23.     "As many courts have noted, the Rule allows an unrestrained "fishing expedition." *In re GHR Energy Corp.*, 33 B.R. 451, 453 (Bankr.D.Mass.1983)." *In re Kipp* 86 B.R. 490, 491 (Bankr. WD Tex 1988). "It is clear that the scope of a Rule 2004 examination is unfettered and broad." *In re GHR Energy Corp.*, 33 B.R. 451, 453 (Bankr. D. Mass. 1983). As explained in *GHR Energy Corp.*:

> The filing of a petition in bankruptcy creates an estate, the administration of which is subject to policing by the bankruptcy court with all its attendant rules of procedure and substantive law. In many ways, the rights of parties who dealt with the debtor prior to the date the petition was filed are altered by the filing of the petition. However unfair this may seem, I suppose all businessmen must be aware that any deals entered into today may be modified by the subsequent financial demise of the other party. ***The broad scope of a Rule 2004 examination is merely one of the peculiar characteristics of bankruptcy law and procedure.*** Just as, e.g., payments to creditors within ninety days of the filing of a petition are subject to being voided, creditors are stayed from continuing foreclosure actions begun prior to the filing, and certain pre-petition liens may be avoided, after the filing of a petition, ***any person may be examined relative to the "acts, conduct, or property" etc. of the debtors on a wide variety of topics.***

33 B.R. at 454 (emphasis added). "The scope of examination permitted pursuant to Rule 2004 is wider than that allowed under the Federal Rules of Civil Procedure and can legitimately be in the nature of a 'fishing expedition'." *In re Fearn*, 96 B.R. 135, 137-38 (Bankr. S.D. Ohio 1989) (citation omitted). "In sum, an inquiry pursuant to Rule 2004 may 'cut a broad swath through the

---

[1] Unlike the facts in *Flambeaux*, there is no pending adversary proceeding or contested matter in this case justifying any limitation on the use of a Rule 2004 examination.

6

debtor's affairs, those associated with him, and those who might have had business dealings with him.'" *Id*. at 138 (citation omitted).

24. "That Rule 2004 offers few of the procedural safeguards provided by Rule 26 is clear. The motion "may be heard ex parte or it may be heard on notice." Advisory Committee Note to Rule 2004." 33 B.R. at 454."

25. Federal law relating to privileges, and not state law, applies to an examination under Bankruptcy Rule 2004:

> The Federal Rules of Evidence apply in cases under the Bankruptcy Code. Bankr. Rule 9017. F.R.E. 501 provides that unless state law supplies the rule of decision, federal common law governs the privilege of a witness. Questions concerning financial condition of a debtor; location, nature and amount of assets and liabilities; size of the estate; and information relating to how the estate may be augmented are questions of federal bankruptcy law. *Matter of International Horizons, Inc.*, 689 F.2d 996, 1003 [9] (11th Cir. 1982). Rule 2004(b) provides that the examination "may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor . . . ." or to "any matter which may affect the administration of the debtor's estate." The subpoena requests production of "all recorded information . . . . relating to George Kroh or his financial affairs, assets or liabilities." This request falls squarely within the scope of a Rule 2004 examination. Accordingly, federal law relating to privileges applies in this case.

*In re Kroh*, 80 B.R. 488, 489 (Bankr. W.D. Mo. 1987).

26. No confidential accountant-client privilege exists under federal law, and no such state-created privilege has been recognized in federal cases. *United States v. Arthur Young & Co.*, 465 U.S. 805, 817, 104 S. Ct. 1495, 79 L. Ed. 2d 826 (1984). As stated by the Eleventh Circuit:

> "The Supreme Court has expressly disapproved of the so-called "accountant-client" privilege, stating that "no confidential accountant-client privilege exists under federal law, and no state-created privilege has been recognized in federal cases." *Couch v. United States*, 409 U.S. 322, 93 S. Ct. 611, 619, 34 L. Ed. 2d 548 (1973). Since *Couch*, the notion that the federal courts should recognize a general accountant-client privilege has been consistently rejected. *See, e.g., United States v. El Paso*, 682 F.2d 530, 540 (5th Cir. 1982) *reh'g en banc denied*, 688 F.2d 840; *Thompson v. General Nutrition Corp.*, 671 F.2d 100, 103-104 (3d Cir. 1982); *United States v. Davis*, 636 F.2d 1028, 1043 (5th Cir. 1981).

7

*In re International Horizons, Inc.*, 689 F.2d 996, 1004 (11th Cir. Ga. 1982). The United States Bankruptcy Court for the Western District of Louisiana has recognized that Louisiana's accountant-client privilege is unavailable in bankruptcy court. *Joyner v. Liprie (In re Liprie)*, 480 B.R. 658, 662-663 (Bankr. W.D. La. 2012).

27.     Moreover, documents prepared at the request of and under direction of a debtor's attorney are not privileged from production in an examination under Bankruptcy Rule 2004:

> Debtor next asserts the records are protected by the attorney-client privilege because some of the records were prepared at the request of and under direction of debtor's attorney. This argument was rejected in *In re Grand Jury Proceedings (Sutton v. United States)*, 658 F.2d 782 (10th Cir. 1981). Sutton involved a grand jury subpoena of accountant's work papers in the possession of the attorney for the corporation under investigation. The workpapers were allegedly prepared at the direction of the attorney in anticipation of an audit of the company by a government agency. The Tenth Circuit found that the relevant relationship was that of accountant-client, not attorney-client. 658 F.2d at 784. It further found, after in camera review of the documents, that they did not embody any attorney-client communications. Based on these findings, the Court declined "to stretch the attorney-client privilege to cover the situations in which the attorney asks the accountant to prepare worksheets . . . ." The Court also noted that there is no federal accountant-client privilege. 658 F.2d at 782.

*In re Kroh*, 80 B.R. 488, 490 (Bankr. W.D. Mo. 1987).

28.     Still further, a debtor cannot prevent the production of information from third parties such as an accountant by claiming a Fifth Amendment privilege against self-incrimination:

> Debtor's third contention is that his accountant's production of the items requested will violate debtor's Fifth Amendment privilege against self-incrimination. This same argument was overruled in *Couch v. United States*, in which the Supreme Court addressed the issue of whether a taxpayer could invoke the Fifth Amendment privilege against self-incrimination to avoid production of business and tax records given by the taxpayer to an accountant for the purpose of preparing income tax returns. The Court found the element of personal compulsion was not present because the IRS summons was directed to the accountant. The Court noted:
>
> > The divulgence of potentially incriminating evidence against petitioner is naturally unwelcome. But petitioner's distress would be no less if the divulgence came not from her accountant but from some other third party with whom she was connected and who

8

possessed substantially equivalent knowledge of her business affairs. The basic complaint of petitioner stems from the fact of divulgence of the possibly incriminating information, not from the manner in which or the person from whom it was extracted. Yet such divulgence, where it does not result from coercion of the suspect, herself, is a necessary part of the process of law enforcement and tax investigation.

409 U.S. at 329, 93 S. Ct. at 616 [10]. The Supreme Court also rejected the taxpayer's reliance on *Boyd v. United States*, 116 U.S. 616, 6 S. Ct. 524, 29 L. Ed. 746 (1886), which held that, "many forcible and compulsory extortion of a man's own testimony, or of his private papers to be used as evidence to convict him of crime" violated the Fifth Amendment. 116 U.S. at 630, 6 S. Ct. at 532. The Court in *Couch* distinguished *Boyd* by finding that "possession bears the closest relationship to the personal compulsion forbidden by the Fifth Amendment." 409 U.S. at 331, 93 S. Ct. at 617 [11]. 1

Here, the subpoena is not directed at debtor and debtor does not assert possession of or a possessory interest in any of the documents. Although debtor may be privileged from producing the evidence himself, there is no privilege preventing its production by another entity. *See Johnson v. United States*, 228 U.S. 457, 458, 33 S. Ct. 572, 57 L. Ed. 919 (1913). Debtor's objection that the subpoena violates his Fifth Amendment privilege against self-incrimination is overruled.

*In re Kroh*, 80 B.R. at 490-491.

### The Parties to be Examined and Documents to Be Produced for Examination

29.     RWDY believes that the following parties should be examined with respect to the

aforementioned claim:

A.     Slate Advance;

B.     The officers, directors, shareholders, managers, members, partners, or other equity owners of Slate Advance, and the accountants, bookkeepers, and other persons who have personal knowledge of the facts upon which the proof of claim was filed for Slate Advance and/or who have personal knowledge of the matters of examination attached hereto as Exhibit B; and

C.     In the event that Slate Advance cannot provide its officers, directors, shareholders, managers, members, partners, other equity owners, and other persons who have personal knowledge of the facts upon which the aforementioned proof of claim for Slate Advance were based, then Ms. Shanna M. Kaminski.

9

30.     Slate Advance, its officers, directors, shareholders, managers, partners, or other equity owners of Slate Advance, and the accountants, bookkeepers, and other persons who have personal knowledge of the facts upon which the proof of claim was filed, and, in default of Slate Advance's providing such persons with personal knowledge, Ms. Kaminski, should be required to appear to be examined and should be ordered to produce the documents and records as described on Exhibit A in advance for review and copying as a part of the examination to be conducted under Rule 2004.

**Local Rule 2004-1**

31.     Local Rule 2004-1 reads:

*LBR 2004-1 Examination.*

  **(a) Good Faith Duty to Confer.**

    Counsel for the parties and any unrepresented individuals shall have a duty to make a good faith effort to resolve by agreement any disputes with regard to an examination and production of documents under Fed. R. Bankr. P. 2004, including its scheduling, scope, length and the extent of documents to be produced. Any objection to an order for a Rule 2004 examination, a motion to enforce compliance with such an order, or with a subpoena, or a motion seeking to modify, limit or quash such an order, shall be accompanied by a statement certifying that counsel for the moving or objecting party or the unrepresented individual have conferred or made a good faith effort to confer in an attempt to resolve the controversy by agreement, but that such efforts were not successful.

  **(b) Examination by Notice.**

    The purpose of LBR 2004-1(a) is to encourage agreements on an examination schedule and to avoid a motion and court order for a Rule 2004 examination. Therefore, examination and production of documents under Fed. R. Bankr. P. 2004 may be initiated by notice, if the entity or person to be examined consents. The notice shall:

    **(1) **specify the scope of the examination;

    **(2) **provide the date, time and place of the examination;

    **(3) **describe any documents to be produced;

**(4)** be filed with the Bankruptcy Clerk; and

**(5)** be served upon the debtor, the debtor's attorney, the chapter 7, 11, 12 or 13 trustee as appropriate, the United States Trustee, and the entity or person to be examined.

The party seeking the examination shall file the notice with the Bankruptcy Clerk and serve it in accordance with this Local Bankruptcy Rule no later than fourteen (14) days before the date set for the examination.

**(c)** **Rule 2004 Inapplicable to Contested Matters and Adversary Proceedings.**

If a contested matter or an adversary proceeding is pending, Fed. R. Bankr. P. 2004 and Local Bankruptcy Rule 2004-1 are inapplicable. Discovery in contested matters and adversary proceedings shall be governed by Fed. R. Bankr. P. 7027 through 7036.

32. On April 25, 2023, counsel for RWDY contacted counsel for MYNT Advance, Ms. Shanna M. Kaminski, Mr. Eric Lockridge, and Ms. Katie Hollowell, by email to make a reasonable effort to arrange a mutually satisfactory date, time and place for the examinations of MYNT Advance, its managers, members, accountants, bookkeepers, and other persons who have personal knowledge of the facts upon which the aforementioned proofs of claim were filed, and, if necessary, Ms. Kaminski. Attached to that email was a rough draft of this motion.

33. On May 3, 2023, counsel for RWDY emailed Ms. Kaminski, Mr. Lockridge, and Ms. Hollowell to follow up on the scheduling of the examination. Mr. Lockridge responded: "Curtis – Shanna is talking with the clients about your request. I anticipate that she will be able to provide suggested dates in the next few days." Ms. Kaminski responded: "Yes. It is a lot of cats to herd. Please be patient with us." Next on May 4, 2023, Ms. Kaminski responded via email:

Curtis,

To confirm, examinations via Zoom are okay correct? That would free up substantially more dates. Also, I will be defending these examinations and I am in Costa Rica until June. Conducting these examinations via Zoom would ensure you get them done this month without delay.

11

If you are set on person examinations we suggest they take place in New York during the first two weeks of June.

Shanna

34.     On May 19, 2023, counsel for RWDY emailed Ms. Kaminski, Mr. Lockridge, and Ms. Hollowell that it was intended that the examinations be conducted in person. The email included a new rough draft of this motion. The email communicated that the requested procedure was that the documents required to be produced would be provided on or before June 15, 2023, with the examination to follow later in June. The intent was to allow for Ms,. Kaminski to return from Costa Rica with the process to follow upon her return.

35.     On May 19, 2023, counsel for Seacoast Business Funding a Division of Seacoast National Bank ("Seacoast"), Mr. Mike Ullman, replied to all on the email chain as follows:

Good afternoon everyone.

In response to the email below that Curtis has issued, I wish to thank him for having noted that, "I am also copying Mr. Mike Ullman and Mr. Jared Ullman on this email because I believe that, as a result of Seacoast's interest in the debtor's receivables, they will want to examine the various MCA lenders under Rule 2004 as well". Our firm, on behalf of Seacoast, does, indeed, wish to take a Rule 2004 examination of the MCA entities.

It appears to make cost-effective sense for our firm to conduct our Rule 2004 examinations similar to the manner in which they are conducted procedurally under Fed. R. Civ. Pro. 30(c)(1) (i.e., "as they would at trial") and Bank. Rule 7030 pertaining to contested matters. If no one has any objections, we will simply do either a companion "EX PARTE MOTION FOR EXAMINATION UNDER BANKRUPTCY RULE 2004" or with all interested parties consent we will simply file a Joinder Notice with the Court or seek to accommodate any alternative suggested method that is the most cost-effective option.

I look forward to hearing from Shanna, Eric, or Katie first thing next week if they have any recommendations.

Best regards and have a great weekend.

Mike Ullman

36.     In turn, Ms. Kaminski replied:

Mike,

I have not spoken with my clients about it, but it probably makes sense just to consent as the Debtor is already conducting the examinations and they will take place at the same time  saving everyone time and money.

Let me know your thoughts on my proposal to have these examinations in New York the first two weeks of June.

Shanna

37.     Having received Mr. Ullman's and Ms. Kaminski's responses, undersigned counsel replied to all:

Dear Shanna, Mike, Jared, and all:

To follow up on this, would it be best to get on a conference call later today or some time tomorrow, so that we can nail down the time, place, and details of the Rule 2004 examination?

I am available any time today or tomorrow.

38.     On May 23, 2023, RWDY's counsel emailed Ms. Kaminski, Mr. Lockridge, and Ms. Hollowell, along with counsel for Seacoast Business Funding a Division of Seacoast National Bank ("Seacoast"):

Dear Shanna, Mike, Jared, and all:

To follow up on this, would it be best to get on a conference call later today or some time tomorrow, so that we can nail down the time, place, and details of the Rule 2004 examination?

I am available any time today or tomorrow.

39.     After having received responses as to counsel's availability, undersigned counsel emailed all that there would be a conference call at 3:00 p.m. Eastern Time (2:00 p.m. Central Time). Ms. Kaminski did not join the conference. However, Mr. Lockridge did. Later on May 23, 2023, Ms. Kaminski sent her apologies and emailed counsel:

13

Curtis,

My apologies again for missing this call. I will do my best to get you dates by tomorrow, but I am in an all-day mediation tomorrow and it is already almost 8 pm EST. I will email the clients tonight and will do my best to meet your request. I will coordinate with Eric and his team and hopefully between the two of us we can get you dates by tomorrow.

As I have indicated several times, having the examinations in New York City is my preference as all of my clients are in the New York City area. We can use my office address as the location:

> 30 W. 24th Street, 9th Floor
> New York, New York

The office is in the FlatIron District in Manhattan on the same block as Eataly. I have another potential space in the Financial District at 88 Pine Street if you'd prefer to be over there.

In the alternative, any location in Manhattan or Brooklyn you are comfortable with is also fine. Again, my only request is that the depositions take place in New York City.

Finally, I think the request for documents to be produced by 6/16 is unreasonable. If the examinations will be in the first two weeks of July I request a production date of no earlier than 6/23.

Shanna

Undersigned counsel responded to Ms. Kaminski's email the next morning letter her know that her office was acceptable and June 23, 2023, was acceptable for the production of the documents:

Thank you, Shanna.

New York is fine, and your office address is fine. June 23rd for the production of the documents is also acceptable.

I look forward to hearing from you on dates.

40. Ms. Kaminski thereafter provided dates on which each of her clients could be made available for examination in late June and the first two weeks of July. Based on the dates provided by Ms. Kaminski, undersigned counsel emailed all:

14

Thank you.

I think a workable schedule would be:

June 28 and 29 (and 30th if necessary) – Spin, Reliance, and MYNT

July 10 and 11 – GOAT, Slate, and Reserve

I can set definite times for each on those dates. However, I believe that it would be preferable if:

1.    You could have Spin ready to go beginning in the morning of June 28, with Reliance on call for June 28 if Spin is completed early enough to allow us to begin with Reliance, and with Reliance otherwise available for the morning of June 29, to be followed by MYNT. In what I think would be the unlikely event that we could not get to Mynt on June 29, we could do MYNT on June 30; and

2.    You could have GOAT ready to go beginning in the morning of July 10, with Slate on call for July 10 if GOAT is completed early enough to allow us to begin with Slate, and with Slate otherwise available for the morning of July 11, to be followed by Reserve on July 11.

Let me know if that is agreeable so that we don't have to block up more days than might be needed.

By copy I ask Mike and Jared Ullman if this schedule will also work for them.

41.    The response from Ms. Kaminski: "I have forwarded this proposed schedule to my clients to see if anyone raises an issue. What you have proposed looks fine to me." Since then, undersigned counsel has confirmed that Seacoast's attorney is available for the proposed dates.

42.    Considering that Ms. Kaminski had already provided the dates on which her clients would be available, considering that the location of the examinations was agreed upon, and considering that the date by which production of the documents would be required, it appears that all of the details had been resolved. Undersigned counsel has not received a further communication indicating that anyone has "raised an issue. Because the place, dates, and times were provided by Ms. Kaminski, RWDY is filing this motion to avoid further ado.

43. RWDY requests that the Court order that:

A. Slate Advance and Ms. Shanna M. Kaminski produce the documents described on Exhibit A hereto to counsel for RWDY: Curtis R. Shelton, Suite 1400 Regions Tower, 333 Texas Street, Shreveport, Louisiana 71101 on or before June 23, 2023, by 4:00 p.m. CDT;

B. On or before June 23, 2023, by 4:00 p.m. CDT, Slate Advance communicate in writing to RWDY's aforementioned counsel the name, address, position and role, of each of Slate Advance's officers, directors, shareholders, managers, members, partners, and/or other equity owners and the accountants, bookkeepers, and other persons who will appear for the examination of Slate Advance, and provide for each the matters of examination as indicated on Exhibit B hereto as to which such person is designated to testify for Slate Advance;

C. Slate Advance appear to be examined under the provisions of Bankruptcy Rule 2004, at 30 W. 24th Street, 9th Floor New York, New York on July 10, 2023, immediately following the conclusion of the Rule 2004 examination of Goat Advance, LLC, and, if there is not sufficient time remaining available on June 28, 2023, to begin or conduct the examination of Goat Advance, LLC, then on June 29, 2023, at 9:00 a.m. if and as necessary to conduct or complete the examination of Slate Advance;

D. Slate Advance produce its officers, directors, shareholders, managers, members, partners, and/or other equity owners and the accountants, bookkeepers, and other persons who have personal knowledge of the facts upon which the proof of claim was prepared and filed and/or who have personal knowledge of the matters of examination attached hereto as Exhibit B for examination at the aforesaid place, on the aforesaid date, and at the aforesaid time; and

E. RWDY's rights to seek further relief from the Court, including, but not limited to, an examination of Ms. Kaminski under Rule 2004 concerning her personal knowledge of the facts upon which she signed the proof of claim for Slate Advance be preserved.

WHEREFORE, RWDY, INC. PRAYS that an order be entered by this Court granting the Rule 2004 examination of Slate Advance, the officers, directors, shareholders, managers, members, partners, and/or other equity owners of Slate Advance, and the accountants, bookkeepers, and other persons who have personal knowledge of the facts upon which the Slate Advance proof of claim was prepared and filed, and:

16

I.     ordering that Slate Advance and Ms. Shanna M. Kaminski produce the documents described on Exhibit A hereto to counsel for RWDY: Curtis R. Shelton, Suite 1400 Regions Tower, 333 Texas Street, Shreveport, Louisiana 71101 on or before June 23, 2023, by 4:00 p.m. CDT;

II.    ordering that, on or before June 23, 2023, by 4:00 p.m. CDT, Slate Advance communicate in writing to RWDY's aforementioned counsel the name, address, position and role, of each of Slate Advance's officers, directors, shareholders, managers, members, partners, and/or other equity owners and the accountants, bookkeepers, and other persons who will appear for the examination of Slate Advance, and provide for each the matters of examination as indicated on Exhibit B hereto as to which such person is designated to testify for Slate Advance;

III.   setting the Rule 2004 examinations of Slate Advance, its officers, directors, shareholders, managers, members, partners, and/or other equity owners, and the accountants, bookkeepers, and other persons who have personal knowledge of the facts upon which the proof of claim was prepared and filed for Slate Advance and/or who have personal knowledge of the matters of examination attached hereto as Exhibit B at 30 W. 24th Street, 9th Floor New York, New York on July 10, 2023, immediately following the conclusion of the Rule 2004 examination of GOAT ADVANCE, LLC, and, if there is not sufficient time remaining available on July 10, 2023, to begin or conduct the examination of Slate Advance, LLC, then on July 11, 2023, at 9:00 a.m. if and as necessary to conduct or complete the examination of Slate Advance;

IV.    ordering Slate Advance to produce its officers, directors, shareholders, managers, members, partners, and/or other equity owners, and the accountants, bookkeepers, and other persons who have personal knowledge of the facts of the facts upon which the proof of claim was prepared and filed for Slate Advance and/or who have personal knowledge of the matters of examination attached hereto as Exhibit B for examination commencing at the aforesaid place, on the aforesaid date, and at the aforesaid time; and

V.     reserving RWDY's rights to seek further relief from the Court, including, but not limited to, an examination of Ms. Kaminski under Rule 2004 concerning her personal knowledge of the facts upon which she signed the proof of claim for Slate Advance.

WHEREFORE, RWDY, INC. PRAYS for all legal and equitable relief.

AYRES, SHELTON, WILLIAMS, BENSON & PAINE, LLC


By: /s/ Curtis R. Shelton
    Curtis R. Shelton
La. Bar Roll No. 17137
Suite 1400, Regions Tower
333 Texas Street (71101)
P. O. Box 1764
Shreveport, LA 71166-1764
Telephone: (318) 227-3500
Direct Dial: (318) 227-3306
Facsimile: (318) 227-3806
Cell Phone: (318) 470-9010
E-mail: curtisshelton@arklatexlaw.com

ATTORNEYS FOR RWDY, INC.

## CERTIFICATE

I HEREBY CERTIFY that a copy of the above and foregoing notice of appearance and request for notices will be provided through the CM/ECF filing and noticing system.

Shreveport, Louisiana, this 26th day of May, 2023.


/s/ Curtis R. Shelton
OF COUNSEL

18

# EXHIBIT A

**DEFINITIONS**

**"Communication"** or **"Communications"** shall include communications or transmissions of any nature between one or more **persons** (as defined herein) and one or more other **persons** (as defined herein) including, without limitation, formal or informal discussions, conversations, conferences or face-to-face meetings or by telephone, conference telephone, telegraph, radio, e-mail, text message, or other electronic communication, or by any other device for transmission of written, electronic, or verbal communications.

**"Debtor"** means RWDY, Inc.

**"Document"** means and includes all designated documents and/or electronically stored information, including, but not limited to, writings, drawings, graphs, charts, photographs, sound **recordings**, images, and other data or data compilations, stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form.

**"Entity"** means and includes any corporation, partnership, limited liability company, joint venture, other juridical person, or any business operated as a sole proprietorship or as a community enterprise.

**"Jet Bankruptcy Case"** means bankruptcy case number 22-70126 filed in the United States Bankruptcy Court for the Western District of Texas.

**"Person"** or **"persons"** shall mean and include all natural persons, corporations, partnerships, limited liability companies, associations, joint ventures, trusts, plans, administered funds, and any and all other kind of association, business, or other **entity** whatsoever and any and all governments and agencies, boards or political subdivisions thereof.

**"Recording"** or **"recordings"** includes the original, if available, or if not, any and all copies, reproductions, and/or facsimiles of any electronic, taped or other recording (audio, video, photographic, or other) of any nature whatsoever.

**"RWDY Bankruptcy Case"** means bankruptcy case number 22-11308 filed in the United States Bankruptcy Court for the Western District of Louisiana.\

**"Slate Advance"** means the **person** or other **entity** on whose behalf Claim 19 was signed and filed in the **RWDY Bankruptcy Case** and any past or present divisions, affiliates, predecessors, successors, assigns, officers, directors, managers, members, parents, subsidiaries, agents, employees, investigators, attorneys, consultants, and all other **persons** and/or **entities** acting or purporting to act for any of them or on their behalf or under their control or direction.

## INSTRUCTIONS

1.      All **documents** must be organized and labeled to correspond to the categories by which the **documents** are described in this Exhibit.

2.      All electronically stored information must be produced in the following forms:

> Emails, text messages or other electronic **communications** in their native form such as by providing a file or files with the extension .PST or .OST;
>
> If any emails, text messages or other electronic **communications** cannot be provided in their native form – in the form of a complete and unedited print-out of the **communication** with a complete and unedited print-out of each attachment thereto;
>
> Electronically stored information created by programs such as Word®, WordPerfect®, Excel, ® Adobe Acrobat®, or other **documents** that create word processing files, image files or similar **documents**, in their native forms such as by providing a file or files with the extension .doc, .docx, .wpd, .xls, .xlsx, .pdf, .txt, etc. as applicable;
>
> Electronically stored information created by other programs – in the form of a complete and unedited print-out of the document; and
>
> Electronically stored information maintained in Quickbooks® or other accounting software or systems by providing a complete backup copy of the files for the "Company" set up in Quickbooks®, along with the password therefor, and all other information necessary to render such backup copy usable, including, but not limited to, the edition and version of the Quickbooks® software by which such backup copy was created and can be opened, or by providing a complete and unedited print-out of the information organized in the form of a general ledger.

3.      **Documents** that are required to be produced because they are described below as containing or in reference to **communications** between or among any **person**, **persons**, **entity**, or **entities**, mean and include any **document** that contains, refers to, or is related to, any **communication** from any one or more of such **person**, **persons**, **entity**, or **entities**, to any other of such **person**, **persons**, **entity**, or **entities**.

2

## DOCUMENTS TO BE PRODUCED

1.  All **documents**, including, but not limited to, all contracts and agreements, signed, executed by, entered into, or otherwise authorized by any one or more of RWDY, Inc., Pusher, LLC, Brian Owen, and/or **Slate Advance** with respect to any sale or purchase of accounts or receipts*, including, but not limited to, all *Standard Merchant Cash Advance Agreement* **documents**, contracts, guarantees, security agreements, sales agreements, assignments, fee structure agreements, deposit authorizations, debit authorizations, payment authorizations, EFT authorizations, ACH debit authorizations, bank log-in information **documents**, emergency contact **documents**, exhibits, weekly payment addendums, and other addenda;

2.  The articles and all other **documents** by which **Slate Advance** was formed and organized and all operating agreements, bylaws, and other governing **documents** under which **Slate Advance** is operated;

3.  A full list of all of the managers and members, officers, directors and shareholders, partners, and/or other equity owners of **Slate Advance** setting forth the name, address, and position or role of each;

4.  Statements of all bank account and other financial institution accounts of **Slate Advance** from April 1, 2022, through March 29, 2023, from which **Slate Advance** advanced, transferred or disbursed any funds to any one or more of RWDY, Inc., Pusher, LLC, and/or Brian Owen;

5.  Statements of all bank account and other financial institution accounts of **Slate Advance** from April 1, 2022, through March 29, 2023, through which **Slate Advance** received any funds or property in satisfaction of any indebtedness or other amounts owing or due to **Slate Advance** from any one or more of RWDY, Inc., Pusher, LLC, and/or Brian Owen, and/or any customer and/or account debtor of any of the foregoing;

6.  All **documents** that show the advance, transfer, or disbursement of any funds from **Slate Advance** to any one or more of RWDY, Inc., Pusher, LLC, and/or Brian Owen which **Slate Advance** contends is a part of the amounts claimed by its proof of claim filed in the **RWDY Bankruptcy Case**;

7.  All **documents** that show the advance, transfer, or disbursement of any funds from **Slate Advance** to any other **person** or **entity** which **Slate Advance** contends constitute a part of the amounts claimed by its proof of claim filed in the **RWDY Bankruptcy Case**;

8.  All **documents** that show the advance, transfer, or disbursement of any funds from any one or more of RWDY, Inc., Pusher, LLC, and/or Brian Owen, and/or any customer and/or account debtor of any of the foregoing to **Slate Advance**;

9.  All **documents** that show the transfer of any funds from any other **person** or **entity** to or for the benefit of **Slate Advance** that was intended to satisfy or reduce any amount owed by, or outstanding from, any one or more of RWDY, Inc., Pusher, LLC, and/or Brian Owen, and/or any customer and/or account debtor of any of the foregoing;

3

10. All **documents** that contain any **communications** between or among any one or more of RWDY, Inc., Pusher, LLC, and/or Brian Owen, and/or **Slate Advance** or any person or entity acting for any of the foregoing with respect to:

   A.   any and all *Standard Merchant Cash Advance Agreement* **documents**;

   B.   any and all **documents** related to any *Standard Merchant Cash Advance Agreement* **document**, including, but not limited to, any contracts, guarantees, security agreements, sales agreements, assignments, fee structure agreements, deposit authorizations, debit authorizations, payment authorizations, EFT authorizations, ACH debit authorizations, bank log-in information **documents**, emergency contact **documents**, exhibits, weekly payment addendums, and other addenda;

   C.   each and every application and any and all requests for funds from **Slate Advance** by any one or more of RWDY, Inc., Pusher, LLC, and/or Brian Owen;

   D.   any and all transfers of funds from **Slate Advance** and/or any financial institution or other **person** or **entity** transferring funds on behalf of **Slate Advance** to any one or more of RWDY, Inc., Pusher, LLC, and/or Brian Owen, and/or any financial institution or other **person** or **entity** receiving funds on behalf of any of the foregoing; and

   E.   any and all transfers of funds from any one or more of RWDY, Inc., Pusher, LLC, and/or Brian Owen, and/or any financial institution or other **person** or **entity** transferring funds on behalf of any of the foregoing to any one or more of **Slate Advance** and/or any financial institution or other **person** or **entity** receiving funds on behalf of **Slate Advance**;

11. All UCC-1 Financing Statements filed by **Slate Advance** or any representative on its behalf naming any one or more of RWDY, Inc., Pusher, LLC, and/or Brian Owen as a debtor or seller;

12. All **documents**, including, but not limited to all due diligence materials, containing any information which **Slate Advance** received or obtained concerning any one or more of RWDY, Inc., Pusher, LLC, and/or Brian Owen before or after **Slate Advance** advanced, transferred, or disbursed any funds to any of the foregoing **entities** or **persons** or any **entities** or **persons** receiving same on behalf of the foregoing **entities** or **persons**;

13. All **documents**, in respect to **Slate Advance's** loan files or other files related to any sale or purchase of accounts or receipts or *Standard Merchant Cash Advance Agreement*(s) between **Slate Advance** and any one or more of RWDY, Inc., Pusher, LLC, and/or Brian Owen;

14. All **documents** showing any and all funds that **Slate Advance** received from any bank account or other financial account maintained by any one or more of RWDY, Inc., Pusher, LLC, and/or Brian Owen;

4

15. All **documents** by which **Slate Advance** was given a security interest in any property in which any one or more of RWDY, Inc., Pusher, LLC, and/or Brian Owen has any interest;

16. All **documents**, reflecting all fees, charges and interest, that **Slate Advance** has received or is entitled to receive under any sale or purchase of accounts or receipts or *Standard Merchant Cash Advance Agreement*(s) in connection with any funds paid or funded to any one or more of RWDY, Inc., Pusher, LLC, and/or Brian Owen;

17. All orders, judgments, decrees, rulings, or decisions in which any has court found that any agreement between **Slate Advance** and any **person** or **entity** constituted a loan or secured financing transaction, did not constitute a true purchase of future receivables, and/or resulted in a contract for the payment of usurious interest;

18. All complaints, petitions, and other pleadings or documents by which any lawsuit, civil action, or other proceeding has been initiated or commenced against **Slate Advance** because of any sale or purchase of accounts or receipts or any *Standard Merchant Cash Advance Agreement*(s);

19. All **documents** showing any ACH debit or electronic funds transfer from any account of any one or more of RWDY, Inc., Pusher, LLC, and/or Brian Owen;

20. All requests made by any one or more of RWDY, Inc., Pusher, LLC, and/or Brian Owen for a reconciliation of any Remittance Amount and all **documents** containing any **communication** related thereto;

21. All bank account and other financial account statements of any one or more of RWDY, Inc., Pusher, LLC, and/or Brian Owen received by **Slate Advance** at any time;

22. All credit card processing statements of any one or more of RWDY, Inc., Pusher, LLC, and/or Brian Owen received by **Slate Advance** at any time;

23. All accounts receivable reports and other **documents** received by **Slate Advance** at any time evidencing accounts receivable of any one or more of RWDY, Inc., Pusher, LLC, and/or Brian Owen;

24. All bank login, DecisionLogic access, or other such information of any one or more of RWDY, Inc., Pusher, LLC, and/or Brian Owen received by **Slate Advance** at any time;

25. All authorizations, bank or financial statements, tax returns, etc. of any one or more of RWDY, Inc., Pusher, LLC, and/or Brian Owen received by **Slate Advance** at any time;

26. All electronic check processing agreements provided by any one or more of RWDY, Inc., Pusher, LLC, and/or Brian Owen to **Slate Advance** at any time;

27. All **documents** that contain **communications**, notices, or other **documents** sent to any customer and/or account debtor of any one or more of RWDY, Inc., Pusher, LLC, and/or Brian Owen;

5

28. All memoranda of, notes from, and/or **recordings** of, any **communications** between or among any one or more of RWDY, Inc., Pusher, LLC, and/or Brian Owen, and/or **Slate Advance** and/or any **person** or **entity** acting on behalf of any of the foregoing **persons** and/or **entities**;

29. All contracts or agreements between **Slate Advance** and any **person** or **entity** who acted as a broker, agent, or other representative with respect to any transaction to which **Slate Advance** and any one or more of RWDY, Inc., Pusher, LLC, and/or Brian Owen were parties;

30. All **documents** that contain any **communications** between or among **Slate Advance**, any **person** or **entity** who acted for **Slate Advance**, and/or any broker, agent, or other representative with respect to any transaction with one or more of RWDY, Inc., Pusher, LLC, and/or Brian Owen;

31. All **documents** that contain any **communications** between or among any broker, agent, or other representative of **Slate Advance** and any customer of any and/or account debtor of one or more of RWDY, Inc., Pusher, LLC, and/or Brian Owen;

32. All **documents** that contain any **communications** between or among any one or more of **Slate Advance**, MYNT Advance, Spin Capital, LLC, Reserve Capital Management, Reliance Financial, Canon Advance LLC, and/or Goat Advance, LLC;

33. All **documents** that contain any **communications** between or among any one or more of RWDY, Inc., Pusher, LLC, Brian Owen, **Slate Advance**, MYNT Advance, Spin Capital, LLC, Reserve Capital Management, Reliance Financial, Canon Advance LLC, and/or Goat Advance, LLC;

34. All **documents** that contain any **communications** between or among any broker, agent, or other representative, officer, director, shareholder, manager, member, partner, or other equity owner of any one or more of any one or more of **Slate Advance**, MYNT Advance, Spin Capital, LLC, Reserve Capital Management, Reliance Financial, Canon Advance LLC, and/or Goat Advance, LLC concerning any one or more of RWDY, Inc., Pusher, LLC, and/or Brian Owen;

35. All **documents** that show or evidence any transfer of any funds to or from any one or more of the following **persons** or **entities** to or for the benefit of any other of the following **persons** or **entities**: **Slate Advance**, MYNT Advance, Spin Capital, LLC, Reserve Capital Management, Reliance Financial, Canon Advance LLC, Goat Advance, LLC, RWDY, Inc., Pusher, LLC, and/or Brian Owen; and

36. All **documents** that show or evidence any transfer of any funds to or from any bank or other financial account of any one or more of the following **persons** or **entities** to any bank or other financial account of any other of the following **persons** or **entities**: **Slate Advance**, MYNT Advance, Spin Capital, LLC, Reserve Capital Management, Reliance Financial, Canon Advance LLC, Goat Advance, LLC, RWDY, Inc., Pusher, LLC, and/or Brian Owen.

6

**EXHIBIT B**

**MATTERS OF EXAMINATION**

Using the same definitions as are set forth in Exhibit A:

1.  The identity of the custodian of each of the **documents** produced as described in Exhibit A;

2.  The location of each of the **documents** produced as described in Exhibit A;

3.  The authenticity of the **documents** produced as described in Exhibit A;

4.  The content, meaning, and operation of the **documents** produced as described in Exhibit A;

5.  The claims and/or proofs of claim filed in the **RWDY Bankruptcy Case** and/or in the **Jet Bankruptcy Case;**

6.  Any and all contracts and agreements, signed, executed by, entered into, or otherwise authorized with respect to any sale or purchase of accounts or receipts as described in the **documents** produced as described in Exhibit A;

7.  The formation, organization, and operation of **Slate Advance**;

8.  The identity of all officers, directors, shareholders, managers, members, partners, and/or other equity owners and the accountants, bookkeepers, and other **persons** who have personal knowledge of the formation, organization, and operation of **Slate Advance**, its purchase of any accounts or receipts, its receipt and application of payments from any **person(s)** on any accounts or receipts which it has claimed to purchase from anyone;

9.  The identity of all persons who have invested funds in or loaned funds to **Slate Advance**;

10. The banks and other financial institutions with which **Slate Advance** does business of any kind;

11. Any and all advances, transfers, or disbursements of any funds from **Slate Advance** which **Slate Advance** contends is a part of the amounts claimed by any proof of claim filed in the **RWDY Bankruptcy Case**;

12. Any and all advances, transfers, or disbursements of any funds from **Slate Advance** which **Slate Advance** contends is a part of the amounts claimed by any proof of claim, if any, filed in the **Jet Bankruptcy Case**;

13. Any and all funds collected or received from any customer and/or account debtor as a result of any sale or purchase of accounts or receipts as described in the **documents** produced as described in Exhibit A;

14. Any and all transfers of any funds from any other **person** or **entity** to or for **Slate Advance** that was intended to satisfy or reduce any amount owed by, or outstanding from, any **person** as a result of any sale or purchase of accounts or receipts as described in the **documents** produced as described in Exhibit A;

15. Any and all **communications** between or among any one or more of the **persons** or **entities** named or identified in Exhibit A;

16. Any and all UCC-1 Financing Statements filed by **Slate Advance** or any representative on its behalf by which **Slate Advance** claims to have a perfected security interest in or ownership of any accounts or receipts as described in the **documents** produced as described in Exhibit A;

17. Any and all due diligence materials as described in Exhibit A and any and all due diligence undertaken by or for **Slate Advance**;

18. **Slate Advance's** files or other files related to any sale or purchase of accounts or receipts which **Slate Advance** contends is a part of the amounts claimed by any proof of claim filed in the **RWDY Bankruptcy Case** or the **Jet Bankruptcy Case**;

19. All **documents** showing any and all funds that **Slate Advance** received from any bank account or other financial account as a result of any sale or purchase of accounts or receipts as described in the **documents** produced as described in Exhibit A;

20. All **documents** by which **Slate Advance** claims to have been given a security interest or ownership interest in any property related to any proof of claim filed in the **RWDY Bankruptcy Case** or the **Jet Bankruptcy Case**;

21. All **documents**, reflecting all fees, charges and interest, that **Slate Advance** has received or is entitled to receive under any sale or purchase of accounts or receipts as described in the **documents** produced as described in Exhibit A;

22. All orders, judgments, decrees, rulings, or decisions in which any has court found that any agreement between **Slate Advance** and any **person** or **entity** constituted a loan or secured financing transaction, did not constitute a true purchase of future receivables, and/or resulted in a contract for the payment of usurious interest;

23. All complaints, petitions, and other pleadings or documents by which any lawsuit, civil action, or other proceeding has been initiated or commenced against **Slate Advance** because of any sale or purchase of accounts or receipts or any *Revenue Purchase Agreement*(s);

24. All **documents** showing any ACH debit or electronic funds transfer from any account of any **person** because of any sale or purchase of accounts or receipts as described in the **documents** produced as described in Exhibit A;

2

25. All requests made by any one or more of RWDY, Inc., Jet Oilfield Services, LLC, Rackback Services, for a reconciliation of any Remittance Amount as provided for in the **documents** produced as described in Exhibit A;

26. All bank account and other financial account statements received by **Slate Advance** at any time that have anything to do with the **documents** produced as described in Exhibit A;

27. All credit card processing statements of received by **Slate Advance** at any time that have anything to do with the **documents** produced as described in Exhibit A;

28. All accounts receivable reports and other **documents** received by **Slate Advance** that have anything to do with the **documents** produced as described in Exhibit A;

29. All bank login, DecisionLogic access, or other such information received by **Slate Advance** at any time that have anything to do with the **documents** produced as described in Exhibit A;

30. All authorizations, bank or financial statements, tax returns, etc. received by **Slate Advance** at any time that have anything to do with the **documents** produced as described in Exhibit A;

31. All electronic check processing agreements provided to **Slate Advance** at any time that have anything to do with the **documents** produced as described in Exhibit A;

32. All **documents** that contain **communications**, notices, or other **documents** sent to any customer and/or account debtor of any accounts or receipts as described in the **documents** produced as described in Exhibit A;

33. All memoranda of, notes from, and/or **recordings** of any **communications** between or among any **persons** or **entities** that have anything to do with the **documents** produced as described in Exhibit A;

34. All contracts or agreements between any **persons** or **entities** who acted as a broker, agent, or other representative with respect to any transaction to which **Slate Advance** was or is a party;

35. All **documents** that contain any **communications** between or among **Slate Advance**, and any other **persons** or **entities** who have acted for **Slate Advance**, with respect to any transaction related to any sale or purchase of accounts or receipts as described in the **documents** produced as described in Exhibit A;

36. All **documents** that contain any **communications** between or among any broker, agent, or other representative of **Slate Advance** and any customer and/or account debtor with respect to any transaction related to any sale or purchase of accounts or receipts as described in the **documents** produced as described in Exhibit A;

3

37. All **communications** between or among any one or more of **Slate Advance**, Slate Advance, MYNT Advance, Reserve Capital Management, Reliance Financial, Spin Capital, LLC, and/or Canon Advance LLC;

38. All **communications** between Brian Owen and **Slate Advance**;

39. All **communications** between Brian Owen and any broker, agent, or other representative, officer, director, shareholder, manager, member, partner, or other equity owner of **Slate Advance**;

40. All transfers of any funds to or from **Slate Advance** that have anything to do with the **documents** produced as described in Exhibit A; and

41. All **documents** that show or evidence any transfer of any funds to or from any bank or other financial account to any bank or other financial account of **Slate Advance** that have anything to do with the **documents** produced as described in Exhibit A.

4