**SO ORDERED.**

**DONE and SIGNED November 25, 2024.**



_____
**JOHN S. HODGE**
**UNITED STATES BANKRUPTCY JUDGE**

---

### IN THE UNITED STATES BANKRUPTCY COURT
### WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

| | | |
|---|---|---|
| **IN THE MATTER OF**: | } | |
| | } | CASE NO. 22-11308 |
| RWDY, INC. | } | |
| | } | CHAPTER 11 |
| **DEBTOR** | } | |

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING THE DEBTOR'S AMENDED PLAN OF REORGANIZATION WITH IMMATERIAL MODIFICATIONS DATED NOVEMBER 13, 2024 [DOCKET NO. 489]

JOHN S. HODGE, UNITED STATES BANKRUPTCY JUDGE

    **THIS MATTER** came before the Court for hearing on November 20, 2024 (the "<u>Confirmation Hearing</u>") to consider confirmation of the Debtor's Amended Plan of Reorganization with Immaterial Modifications Dated November 13, 2024 [Docket No. 489] (the "Plan") filed by RWDY Inc., (the "Proponent"). This Court, having considered the Plan and the evidence presented at the Confirmation Hearing, including the proffers, statements and representations of counsel, and pursuant to Federal Rule of Civil Procedure 52(a)(1), as incorporated by **Bankruptcy Rule 7052**, issued its oral ruling on the record at the Confirmation Hearing and in accordance with the Court's ruling on the record, makes the following findings of fact and conclusions of law:

## Findings and Conclusions

The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052, made applicable to this proceeding pursuant to Fed. R. Bankr. P. 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

## Jurisdiction and Venue

A. On December 21, 2022 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

B. This Court has jurisdiction over the Debtor and the subject matter of the confirmation hearing pursuant 28 U.S.C. § 1334(a). This Court has authority over the confirmation hearing pursuant 28 U.S.C. § 157(b)(2)(L).The confirmation hearing is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and (2)(L). Venue of the Chapter 11 Case in this District is proper pursuant to 28 U.S.C. § 1408. This Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed, and this Court's exercise of such jurisdiction to enter a final order with respect thereto is proper in all respects.

C. No statutory committees have been appointed in this case.

## Voting and Consent to Modification

D. Votes to accept or reject the Plan have been solicited with proper and sufficient notice and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules and, as applicable, the local rules.

E. All creditors were provided with proper and sufficient notice of the Plan of Reorganization dated August 7, 2024 [Docket No. 446], and the Amended Plan of Reorganization with Immaterial Modifications Dated November 13, 2024 [Docket No. 489] and have consented to the changed treatment.

## Burden of Proof

F. The Plan Proponent has the burden of proving the elements of Section 1129(a) (and if applicable, Section 1129(b)) of the Bankruptcy Code by a preponderance of the evidence and they have met that burden as further found and determined herein.

## Compliance with Sections 1122, 1123 and 1129 of the Bankruptcy Code

G. Section 1129(a)(1) – Plan's Compliance with the Bankruptcy Code. The Plan complies with all applicable provisions of the Bankruptcy Code as required by Section 1129(a)(1) of the

Bankruptcy Code, including, without limitation, Sections 1122 and 1123 of the Bankruptcy Code.

H. <u>Sections 1122(a) and 1123(a)(1)-(4)</u>. The Plan satisfies Sections 1122(a) and 1123(a)(1) of the Bankruptcy Code by designating separate Classes of Claims, and each of which contains Claims that are substantially similar to the other Claims within that Class. The Plan satisfies Sections 1123(a)(2) through (4) of the Bankruptcy Code by specifying the treatment of each Class that is impaired, and by providing the same treatment for each Claim within a particular Class.

I. <u>Section 1123(a)(5)</u>. The Plan and various documents set forth therein provide adequate means for the Plan's implementation, including, inter alia: (i) the property of the estate vesting in the Reorganized Debtor, (ii) the Reorganized Debtor continuing to operate its business following the Effective Date, (iii) the Reorganized Debtor being required to timely fund and transfer payments authorized under this Plan to recipients, and (iv) paying the United States Trustee quarterly fees incurred pursuant to 28 U.S.C. § 1930(a)(6). Accordingly, the Plan satisfies Section 1123(a)(5) of the Bankruptcy Code.

J. <u>Sections 1123(a)(6) – (a)(8)</u>. Pursuant to Section 1123(a)(6) of the Bankruptcy Code, the charter of the Reorganized Debtor prohibits the issuance of nonvoting equity securities. The Plan satisfies Section 1123(a)(7) of the Bankruptcy Code because its provisions are consistent with the interests of creditors and equity security holders and with public policy regarding the manner of selection of any officer, director, or trustee under the Plan and any successor to such officer, director, or trustee. Section 1123(a)(8) does not apply because the Debtor is not an individual.

K. <u>Section 1123(b)</u>. The provisions of the Plan comply with, and are not inconsistent with, the applicable provisions of the Bankruptcy Code, including Section 1123(b). Among other items, the Plan identifies and impairs, or, as applicable, leaves unimpaired, each Class of Claims pursuant to Section 1123(b)(1), and it provides, pursuant to Section 1123(b)(2), for the assumption and assignment, or rejection, of the Debtor's previously unrejected executory contracts and unexpired leases. Pursuant to Section 1123(b)(6) of the Bankruptcy Code, the Plan contains other customary provisions that are consistent with the Bankruptcy Code, including: (i) provisions governing Distributions on account of Allowed Claims; (ii) procedures for resolving Disputed Claims; (iii) provisions regarding the modification of the Plan; and (iv) provisions for the retention of jurisdiction by this Court with respect to certain matters listed in Article XI of the Plan. The failure to specifically address a provision of the Bankruptcy Code in this Confirmation Order does not diminish or impair the effectiveness of this Confirmation Order.

L. <u>Bankruptcy Rule 3016(a)</u>. The Plan is dated and identifies the entity submitting the Plan as the Plan Proponent, thereby satisfying Bankruptcy Rule 3016(a).

M. Section 1129(a)(2) – Plan Proponent's Compliance with the Bankruptcy Code. Plan Proponent's Compliance with the Bankruptcy Code. The Plan Proponent has complied with the applicable provisions of the Bankruptcy Code. The Plan Proponent is the appropriate entity to propose the Plan and has solicited acceptances of the Plan in accordance with the requirements of Section 1125 of the Bankruptcy Code, the Bankruptcy Rules, and, as applicable, the Local Rules.

N. Section 1129(a)(3) – Plan Proposed in Good Faith. The Plan Proponent has proposed and solicited the Plan in good faith and not through any means prohibited by law. The Plan is the result of extensive, good-faith, arm's-length negotiations between the Plan Proponent and the Claim Holders and, as evidenced by strong creditor support for the Plan, achieves the goals broadly embodied in the Bankruptcy Code. Therefore, the Plan complies with Section 1129(a)(3) of the Bankruptcy Code.

O. Section 1129(a)(4) – Payment for Services. Any payment made or to be made by the Debtor for services or for costs and expenses in connection with this Chapter 11 case, or in connection with the Plan and incidental to the Chapter 11 case, has been approved by the Court or is subject to the Court's approval as reasonable, thereby satisfying Section 1129(a)(4) of the Bankruptcy Code.

P. Section 1129(a)(5) – Identity of Management. In accordance with Section 1123(b)(3)(B) of the Bankruptcy Code, the Proponent sufficiently identified the management of the Reorganized Debtor. Therefore, the Plan complies with Section 1129(a)(5) of the Bankruptcy Code..

Q. Section 1129(a)(6) – No Rate Changes. The Plan does not involve the establishment of rates over which any regulatory commission has or will have jurisdiction after confirmation. Therefore, Section 1129(a)(6) of the Bankruptcy Code does not apply to the Plan.

R. Section 1129(a)(7) – Best Interests of Creditors. With respect to each impaired Class of Claims, each Holder in such Class has either accepted the Plan or will receive or retain, under the Plan, property of a value, as of the Effective Date, that is not less than the amount such Holder would receive or retain if the Debtor were liquidated on the Effective Date under Chapter 7 of the Bankruptcy Code. Therefore, the Plan complies with Section 1129(a)(7) of the Bankruptcy Code.

S. Section 1129(a)(8) – Acceptance by Certain Classes. The following Classes are impaired and, as indicated in the Ballot Summary at Docket No. 494, have accepted the Plan because, pursuant to Section 1126(c) of the Bankruptcy Code, more than one-half (1/2) of the number and at least two-thirds (2/3) of the dollar amount actually voting have accepted the Plan: Class 2 (Seacoast Business Funding), Class 4 (RWDY Distribution Trust), Class 5 (Jason Brazzel), Class 9 (Holders of General Unsecured Claims), and Class 10 (Equity

Interest Holders). No Class voted to reject the Plan. Class 2, Class 4, Class 5, and Class 9 are impaired under the Plan. Therefore, the Plan is confirmable because it satisfies Section 1129(b)(1) of the Bankruptcy Code.

T.  <u>Section 1129(a)(9) – Treatment of Administrative Claims and Other Priority Claims</u>. The treatment of Administrative Claims and Other Priority Claims pursuant to the Plan satisfies the requirements of Sections 1129(a)(9)(A) and (B) of the Bankruptcy Code.

U.  <u>Section 1129(a)(10) – Acceptance by One Impaired Class</u>. The Plan has been accepted by Class 2, Class 4, Class 5, and Class 9, each of which is impaired under the Plan. Because at least one impaired Class of Claims has accepted the Plan, excluding any acceptance of the Plan by an insider, the Plan satisfies the requirements of Section 1129(a)(10) of the Bankruptcy Code.

V.  <u>Section 1129(a)(11) – Feasibility</u>. Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor of the Debtor under the Plan. Therefore, the Plan complies with Section 1129(a)(11) of the Bankruptcy Code.

W.  <u>Section 1129(a)(12) – Payment of Fees</u>. All fees payable under 28 U.S.C. § 1930 will be paid on or before their due date. Therefore, the Plan complies with Section 1129(a)(12) of the Bankruptcy Code.

X.  <u>Section 1129(a)(13) – Retiree Benefits</u>. The Debtor does not sponsor or provide any retiree benefit plans within the meaning of Section 1114 of the Bankruptcy Code. Accordingly, Section 1129(a)(13) of the Bankruptcy Code is not applicable to the Plan.

Y.  <u>Section 1129(a)(14) – Domestic Support Obligations</u>. The Debtor is not required to pay any domestic support obligations. Accordingly, Section 1129(a)(14) of the Bankruptcy Code is not applicable to the Plan.

Z.  <u>Section 1129(a)(15) – Debtor is Not an Individual</u>. The Debtor is not an individual. Accordingly, Section 1129(a)(15) of the Bankruptcy Code is not applicable to the Plan.

AA.  <u>Section 1129(a)(16) – Transfers</u>. The Debtor is a moneyed, business, or commercial corporation or trust; therefore, Section 1129(a)(16) of the Bankruptcy Code is not applicable to the Plan..

BB.  <u>Section 1129(b) – Cramdown</u>. This Court, having considered the evidence presented at the Confirmation Hearing by the Plan Proponent, confirms the Plan under Section 1129(b) of the Bankruptcy Code notwithstanding the lack of votes for or against the Plan by Class 1 (U.S. Small Business Administration), Class 3 (Origin Bank), Class 7 (United States Small Business Administration PPP CARES Act claim), Class 8 (Cudd Energy Claimants who cast an untimely vote for the Plan), and the deemed rejection of the Plan by Class 6 (Merchant Cash Advance Claimants who will receive no distribution under

the Plan), as well as the estimation of Amended Claim No. 5 filed by the Department of Treasury—Internal Revenue Service at $0.00 for voting and distribution purposes. This is because the Plan does not unfairly discriminate against, and is fair and equitable with respect to, the Holders of Claims in Classes 1, 3, 6, 7, and 8.

CC.  Section <u>1129(c) – Only One Plan</u>. The Plan is the only plan confirmed in this Chapter 11 case; therefore, the Plan and this Confirmation Order comply with Section 1129(c) of the Bankruptcy Code.

DD.  <u>Section 1129(d) – Principal Purpose of Plan</u>. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933, as amended. Therefore, the Plan complies with Section 1129(d) of the Bankruptcy Code.

EE.  <u>Section 1129(e) – Small Business Case</u>. This Chapter 11 case is not a small business case within the meaning of the Bankruptcy Code. Accordingly, Section 1129(e) of the Bankruptcy Code is inapplicable to this Chapter 11 case.

FF.  <u>Assumption and Rejection of Contracts</u>. Article VII of the Plan, governing the assumption and assignment or rejection of executory contracts and unexpired leases, satisfies the requirements of Sections 365(a), 365(b), and 365(f) of the Bankruptcy Code.

GG.  <u>Section 1125(e) – Good Faith Solicitation</u>. The Plan Proponent has complied with Section 1125(e) in transmitting the solicitation materials and soliciting and tabulating votes and, as applicable, consent forms.


It is therefore **ORDERED AND ADJUDGED** that:


1.  The Plan, attached hereto as **<u>EXHIBIT A</u>**, is **CONFIRMED** and **APPROVED** in all respects.

2.  <u>Findings and Conclusions</u>. The Findings of Fact and Conclusions of Law set forth above constitute the findings of fact and conclusions of law of this Court pursuant to Federal Rule of Civil Procedure 52(a)(1), as incorporated by Bankruptcy Rule 7052. To the extent any finding of fact is later determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law is later determined to be a finding of fact, it shall be so deemed.

3.  <u>Notice:</u> Notice was adequate and sufficient under the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, Orders of this Court, and the Due Process Clause of the United States Constitution.

4. <u>Effective Date</u>. The Effective Date of the Plan shall be on the first Business Day that is the day after this Confirmation Order is entered.

5. <u>Binding Effect</u>. The Plan and its provisions shall be binding on the Debtor, the Reorganized Debtor, any entity acquiring or receiving property or a distribution under the Plan, and any creditor of or holder of an Equity Interest in the Debtor, including all governmental entities, whether or not the Claim of such creditor or the Equity Interest of such holder is disallowed, extinguished, or impaired under the Plan, or whether or not such creditor or Equity Interest holder has accepted the Plan.

6. <u>Amended Claim No. 5 filed by the IRS</u>. On October 16, 2024, the Debtor filed an Objection to, and Motion to Estimate, Amended Claim Number 5 filed by the Department of Treasury—Internal Revenue Service [Document No. 479]. The Court conducted a hearing on the Debtor's Objection and Motion on November 20, 2024.

At the hearing, the Debtor presented extensive testimony and introduced a substantial volume of documentary evidence in support of its position. Counsel for the Department of Treasury—Internal Revenue Service appeared and participated in the proceedings. Following the submission of testimony, documentary evidence, and arguments of counsel, the Court rendered its decision, announcing its findings and rulings in open court.

For the reasons stated on the record, the Court denied the Debtor's Objection but granted the Motion to Estimate. A written order memorializing the Court's ruling was entered on November 21, 2024 [Document No. 499].

The relevant provisions of the Court's order are quoted and incorporated in full below.

   IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

   Claim 5 is hereby estimated at zero ($0.00) for purposes of allowance, distribution, and voting.

   Notwithstanding the foregoing estimation of Claim 5, the Debtor's/ Reorganized Debtor's liability for corporate income taxes for the 2022 tax year shall remain subject to determination through the IRS's audit and/or examination process, subsequent conferences with the IRS's manager, any mediation or alternative dispute resolution (ADR) procedures offered by the IRS, any further proceedings, and/or any appeal.

   Further notwithstanding the foregoing estimation of Claim 5, the Debtor's/Reorganized Debtor's liability for corporate income taxes for the 2022 tax year shall not be discharged by the confirmation of the Debtor's Plan, the entry of an order of substantial consummation, the entry of a final decree, or the closing of this Chapter 11 case.

Further, any statute(s) of limitations applicable to the IRS and/or the Debtor or Reorganized Debtor shall be deemed to be tolled and interrupted as of the Effective Date of the Debtor's Plan, including, but not limited to, any statute(s) of limitations applicable to audit, examination, assessment of the tax, conference, mediation, any ADR procedure, any further proceedings, and/or any appeal.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that, in the event of any conflict between this order and the Debtor's Plan, this order shall be controlling.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that the Debtor's request that Claim 5 be disallowed is denied as moot.

7. <u>Corporate Action / General Authorizations</u>. All matters provided for under the Plan involving any corporate action to be taken by, or required of, the Debtor shall be deemed to have occurred and to be effective as provided in the Plan, and are hereby authorized and approved in all respects without any requirement for further action by the stockholders, directors, members, or partners of any such entities. Notwithstanding the foregoing, the Reorganized Debtor is authorized, to the extent necessary or advisable, to execute, deliver, file, or record such contracts, instruments, settlement agreements, releases, indentures, and other agreements or documents and to take or direct such actions as may be necessary or appropriate on behalf of the Debtor to effectuate and further evidence the terms and conditions of the Plan.

8. <u>Tax Returns</u>. The Reorganized Debtor shall timely file all tax returns as required by applicable state law and by 28 U.S.C. §§ 959(b) and 960. Any setoff rights available under Section 553 of the Bankruptcy Code to any Governmental Units are hereby expressly reserved for the benefit of such Governmental Units.

9. <u>Fees Under 28 U.S.C. § 1930</u>. All pre-Effective Date fees payable under 28 U.S.C. § 1930 shall be paid on or before their due date, or as soon thereafter as practicable, After the Effective Date, United States Trustee fees will continue to be paid until the closing of the Bankruptcy Case..

10. <u>Retention of Jurisdiction</u>. Pursuant to Sections 105(a) and 1142 of the Bankruptcy Code, this Court shall retain jurisdiction to the fullest extent permitted by law to interpret and enforce the provisions of the Plan, this Order, and all other matters as set forth in the Plan.

11. <u>Discharge</u>. On the Effective Date, and automatically, without need for further document, order, or action, the Debtor shall be discharged of all Claims arising prior to the Effective Date pursuant to the provisions of Section 1141(d) of the Bankruptcy Code.

12. <u>No Stay of Order</u>. This Order is a final order and shall be effective and enforceable immediately upon its entry and shall not be stayed pursuant to Bankruptcy Rules 3020(e), 6004(h), 6006(d), 7062, or otherwise.

13. <u>Failure to Reference</u>. The failure to reference a particular provision of the Plan in this Order shall not affect the validity or enforceability of such provision. Each provision of the Plan shall be deemed authorized and approved by this Order and shall have the same binding effect as every other provision of the Plan, whether or not mentioned in this Order.

**IT IS SO ORDERED**

**###**

**ORDER PREPARED AND SUBMITTED BY:**

**ROBERT W. RALEY ESQ.**

By: /s/ Robert W. Raley
Robert W. Raley - La. Bar #11082
290 Benton Spur Road
Bossier City, LA 71111
Telephone: 318-747-2230
bankruptcy@robertraleylaw.com

and

**AYRES, SHELTON, WILLIAMS, BENSON & PAINE, LLC**

By: /s/ Curtis R. Shelton
Curtis R. Shelton - La. Bar Roll No. 17137
Suite 1400, Regions Tower
333 Texas Street (71101)
P. O. Box 1764
Shreveport, LA 71166-1764
Telephone: (318) 227-3500
Direct Dial: (318) 227-3306
Facsimile: (318) 227-3806
Cell Phone: (318) 470-9010
E-mail: curtisshelton@arklatexlaw.com

ATTORNEYS FOR RWDY, INC.

**In the United States Bankruptcy Court**
**Western District of Louisiana**
**Shreveport Division**

| | | |
|---|---|---|
| **In the Matter Of**: | } | |
| | } | Case No. 22-11308 |
| RWDY, Inc. | } | |
| | } | Chapter 11 |
| **Debtor** | } | |

**DEBTOR'S AMENDED PLAN OF REORGANIZATION**
**WITH IMMATERIAL MODIFICATIONS DATED NOVEMBER 13, 2024**

RWDY, Inc. (the "Debtor") proposes the following Plan of Reorganization (the "Plan").

## ARTICLE I
## SUMMARY OF THE PLAN

**1.1** **Overview of the Plan**: The Plan provides for a reorganization of all liabilities owed by and Claims against the Debtor. The Reorganized Debtor shall be the surviving Entity to the Debtor.

**1.2** **Payments to Creditors**: The Plan provides for Creditors to be paid as provided in Article IV and Article V herein through distributions made directly by the Reorganized Debtor and distributions made by the RWDY Distribution Trust from revenues derived from the operations of the Reorganized Debtor's business. All Creditors of the Debtor will be paid as provided herein in accordance with the priority scheme established by the Bankruptcy Code.

## ARTICLE II
## DEFINITIONS, RULES OF INTERPRETATION AND COMPUTATION OF TIME

**2.1** **Scope of Definitions**: As used in this Plan, the following terms shall have their respective meanings as set forth below and, unless the context otherwise requires, shall be equally applicable to the singular and plural forms of the terms defined. Unless otherwise defined herein, the terms used in this Plan shall have the same meaning ascribed thereto in the Bankruptcy Code and the Bankruptcy Rules.

**2.2** **Definitions**:

2021 Confirmation Order: "2021 Confirmation Order" means the Order Confirming Debtor's Amended Plan of Reorganization with Immaterial Modifications Dated January 20, 2021, filed by RWDY Inc. and entered at Docket No. 283 in RWDY Case 20-10616.

2021 Plan: "2021 Plan" means the Debtor's Amended Plan of Reorganization with Immaterial Modifications Dated January 20, 2021, filed by RWDY Inc. and entered at Docket No. 283 in RWDY Case 20-10616 , which was confirmed on January 21, 2021, in RWDY Case 20-10616.

Administrative Claim: "Administrative Claim" means any Claim or request for payment of any cost or expense of administration of the Chapter 11 Case entitled to priority in accordance with Sections 503(b) and 507(a) of the Bankruptcy Code, including, without limitation, (a) any actual and necessary expenses of preserving the Debtor's Estate and operating its business from and after the Petition Date to and including the Confirmation Date, (b) all allowances of compensation and reimbursement approved by the Court in accordance with the Bankruptcy Code, and (c) any fees or charges assessed against the Debtor's Estate under Chapter 11 of the Bankruptcy Code.

Administrative Claim Bar Date: "Administrative Claim Bar Date" means the date that is thirty (30) days after the Confirmation Date.

Allowed: When used with respect to any Claim except for a Claim that is an Administrative Claim, "Allowed" means (a) such Claim to the extent it is not a Contested Claim or Disputed Claim; (b) such Claim to the extent it is set forth pursuant to any stipulation or agreement that has been approved by Final Order; or (c) a Contested Claim or Disputed Claim, proof of which was filed timely with the Bankruptcy Court and (1) as to which no objection was filed by the Claims Objection Deadline.

Allowed Priority Claim: "Allowed Priority Claim" means all or that portion of any Priority Claim that is or has become an Allowed Claim.

Allowed MCA Claims: "Allowed MCA Claims" means each of Claim Number 8, Claim Number 9, Claim Number 14, Claim Number 15, Claim Number 16, Claim Number 17, Claim Number 18, and Claim Number 19 filed in this Bankruptcy Case, which claims were deemed allowed pursuant to the Compromise Order. Notwithstanding anything to the contrary herein, "Allowed MCA Claims" neither means nor includes Claim Number 12 filed in this Bankruptcy Case.

Allowed Secured Claim: "Allowed Secured Claim" means all or that portion of any Secured Claim that is or has become an Allowed Claim.

Approval Date: "Approval Date" means June 17, 2024, the date on which the Bankruptcy Court entered the Compromise Order.

Assigned Claims: "Assigned Claims" means the CPA Claims and Causes of Action and the Related RWDY Claims, further including, but not be limited to, the following claims arising prior to the Approval Date of, and as described in, the Compromise Agreement: (a) any and all claims, rights, and causes of action against the Respondents/Liable Parties for any acts or omissions constituting negligence, a breach of professional duties, a breach of professional standards,

breach of a fiduciary duty, fraud, dishonesty, any tort, or any violation of any legal duty or contract; (b) any and all of RWDY's rights against the Respondents/Liable Parties and all remedies therefor, including, but not limited to, the right to recover any and all damages of any type of description incurred by RWDY as a consequence of such acts and omissions including, without limitations, (i) losses of the funds converted by Owen and/or any other person on account of the acts or omissions of the Respondents/Liable Parties; (ii) and all of RWDY's recoverable losses and damages incurred as a result of (1) Owen's relationship with the MCA Claimants, (2) the filing of the Bankruptcy Case, (3) fees and expenses required to be paid to the Office of the United States Trustee in respect to the Bankruptcy Case, (4) fees and expenses incurred by RWDY for the filing and conduct of the Bankruptcy Case and any and all proceedings therein, and (5) RWDY's assignment and transfer of the CPA Claims and Causes of Action and the Related RWDY Claims to the MCA Claimants; and (iii) any loss or diminishment in value of RWDY caused by such acts and omissions.

Avoidance Action: "Avoidance Action" means any and all rights, claims or actions which the Debtor may assert on behalf of the Estate under Chapter 5 of the Bankruptcy Code, including actions under one or more provisions of Sections 542, 544, 545, 546, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code, except to the extent that any such rights, claims, or actions are expressly released or waived in this Plan.

Bankruptcy Code: "Bankruptcy Code" means Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as hereafter amended.

Bankruptcy Court: "Bankruptcy Court" means the United States Bankruptcy Court for the Western District of Louisiana.

Bankruptcy Rules: "Bankruptcy Rules" means the rules of procedure applicable to cases or proceedings pending before the Court, now existing or as hereafter amended.

Bar Date: "Bar Date" means the date of March 31, 2023, fixed by the Bankruptcy Court's Order entered on February 9, 2023 [Doc. No. 93] as the last date upon which proofs of claim or interest may be filed in this Chapter 11 case, provided that the last date upon which proofs of claim may be filed by a governmental unit was fixed as July 29, 2023.

Beneficiaries: "Beneficiaries" in the context of the RWDY Distribution Trust means those persons holding beneficial interests in the RWDY Distribution Trust, created upon confirmation of the RWDY Chapter 11 Plan of Reorganization in RWDY Case No. 20-10616, each of which is identified as a RWDY Distribution Trust Beneficiary in the table set forth in Section 5.4.1 of the Plan.

Business Day: "Business Day" means any day on which banks are open to carry on their ordinary commercial banking business in Shreveport, Louisiana.

Cash: "Cash" means cash, cash equivalents and other readily marketable securities or instruments, including, without limitation, direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any Entity, including interest earned or accrued thereon, but specifically excluding any collateral consisting of funds in deposit or escrow accounts securing a Secured Claim.

Cause of Action: "Cause of Action" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, Liens, indemnities, guaranties, promises, warranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise. "Cause of Action" also includes: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 551, or 553 of the Bankruptcy Code; and (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

Chapter 11 Case: "Chapter 11 Case" means the Chapter 11 bankruptcy case of RWDY, Inc., filed in the United States Bankruptcy Court for the Western District of Louisiana, Shreveport Division, on December 21, 2022, Case No. 22-11308 (sometimes referred to as "The New Bankruptcy Case" or "RWDY II").

Claim: "Claim" has the meaning given to that term in 11 U.S.C. § 101(5).

Claim Objection: "Claim Objection" means any objection to a Claim and any right to object to a Claim being Allowed.

Claims Objection Deadline: Except as otherwise provided in any order of the Court establishing an earlier date, "Claims Objection Deadline" means the date that is ninety (90) days after the Effective Date and by which parties authorized by the Plan to do so may file objections to Claims other than Administrative Claims. (The deadline for objections to Administrative Claims is specified elsewhere in the Plan.)

Collateral: "Collateral" means property in which the Debtor has an interest that secures, in whole or in part, payment of an Allowed Secured Claim.

Compromise Agreement: "Compromise Agreement" means that Compromise Agreement entered into between the MCA Claimants, the Debtor, and Seacoast Business Funding, A Division of Seacoast National Bank, a fully executed copy of which is attached hereto as Exhibit 1.

Compromise Order: "Compromise Order" means the Bankruptcy Court's Order Granting Authority to Enter Compromise entered by the Court dated June 17, 2024 (Doc. No. 437).

Confirmed Plan: "Confirmed Plan" means the Plan confirmed by an Order of the Bankruptcy Court.

Confirmation: "Confirmation" means the entry of an Order of the Bankruptcy Court confirming the Plan.

Confirmation Date: "Confirmation Date" means the date of entry of the Confirmation Order in accordance with the provisions of the Bankruptcy Code, provided, however, that if the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the earlier of the date of entry of an Order vacating such stay or the date on which such stay expires or is no longer in effect.

Confirmation Hearing: "Confirmation Hearing" means the hearing conducted by the Court to consider confirmation of the Plan pursuant to Section 1129 of the Bankruptcy Code.

Confirmation Order: "Confirmation Order" means an Order of the Court confirming the Plan.

Contested: When used with respect to a Claim, "Contested" means a Claim against the Debtor (a) that is listed in the Debtor's Schedules as disputed, contingent or unliquidated regardless of whether a proof of claim has been filed or not; (2) that is listed in the Debtor's Schedules as undisputed, liquidated and not contingent and as to which a proof of claim has been filed with the Bankruptcy Court, to the extent the proof of claim amount exceeds the scheduled amount; (3) that is not listed in the Debtor's Schedules, but as to which a proof of claim has been filed with the Bankruptcy Court; or (iv) as to which an objection has been filed. Notwithstanding the foregoing, after the Claims Objection Deadline, including any extensions thereof, only Claims to which an Objection has been filed shall be deemed Contested Claims with respect to Claims for which a proof of claim has been filed.

Contingent Claim: "Contingent Claim" means any Claim listed as "contingent" in the Debtor's Schedules.

Court: "Court" means (a) the Bankruptcy Court, (b) such other court as may exercise jurisdiction over the Chapter 11 Case or any appeal from any Order or judgment in the Chapter 11 Case or any adversary proceeding related to the Chapter 11 Case, and/or (c) any court that exercises jurisdiction under 28 U.S.C. § 1334 and/or 28 U.S.C. § 157 in relation to the Chapter 11 Case or any adversary proceeding or other proceeding commenced in the Bankruptcy Court or the United States District Court for the Western District of Louisiana.

CPA Claims and Causes of Action: "CPA Claims and Causes of Action" means the CPA Claims and Causes of Action as defined in the Compromise Agreement.

Creditor: "Creditor" means any Entity that is the Holder of a Claim or an Interest, including, but not limited to: (a) a Claim that arose on or before the Petition Date, (b) an Interest that arose on or before the Petition Date, (c) a Claim against the Debtor's Estate of any kind specified in Section 502(g), Section 502(h), or Section 502(i) of the Bankruptcy Code or (d) an Administrative Claim.

Cure Claim: A "Cure Claim" means the payment or other performance required to cure any existing default under an executory contract in accordance with Section 365 of the Bankruptcy Code and, unless otherwise specifically provided for in the Plan, must be presented via an "Assumption Cure Proof of Claim" as described in Section 7.2 of the Plan.

Debtor: "Debtor" means RWDY, Inc.

Debtor Distributions: "Debtor Distributions" means distributions made directly by the Debtor or Reorganized Debtor.

Default: Notwithstanding anything contained herein to the contrary, a "Default" means a failure by the Reorganized Debtor or the RWDY Distribution Trust to comply with any material provision of the Confirmed Plan, the Confirmation Order or the RWDY Trust Agreement which failure is not remedied within 30 days of written notice of the failure to the Reorganized Debtor, c/o Kenneth A. Lowery, 4717 Viking Drive, Bossier City, Louisiana 71111.

Disallowed: With respect to any Claim, "Disallowed" means a Claim or any portion thereof that (a) has been disallowed by a Final Order, (b) is scheduled as zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law or the Plan, (c) is not scheduled and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law or the Plan, (d) has been waived or withdrawn by agreement of the applicable Debtor or Reorganized Debtor, as applicable, and the Holder thereof, or (e) has been waived or withdrawn by the Holder thereof.

Disclosure Statement: "Disclosure Statement" means the written Disclosure Statement filed and served with respect to the Plan, as approved by the Court pursuant to Section 1125 of the Bankruptcy Code.

Disputed Claim: "Disputed Claim" means any Claim or Interest to which an objection has been interposed in accordance with the Bankruptcy Code, Bankruptcy Rules, this Plan or orders of the Court.

Distribution Date and Distributions: The "Distribution Date" means the 15th day of the first full month following the Effective Date and the 15th day of each succeeding month.

Distribution Trustee: "Distribution Trustee" means Lucy G. Sikes.

Distributions under the Plan: "Distributions under the Plan" shall mean distributions made directly by the Reorganized Debtor and distributions made by the RWDY Distribution Trust.

Effective Date: "Effective Date" means a Business Day selected by the Debtor after the conditions precedent to the effective date of the Plan, as set forth in Section 13.5 hereof, have been met, including that the Confirmation Order has become a Final Order. The Effective Date may be the date of the entry of an order confirming the Plan if no appeal thereof is thereafter timely filed.

Entity: The term "Entity" means and includes any person, estate, trust, governmental unit, and United States trustee, as applicable according to the context in which it is used.

Estate: "Estate" means the estate created in the Chapter 11 Case pursuant to Section 541 of the Bankruptcy Code.

Equity Interest: "Equity Interest" means an interest in the ownership of the Debtor.

Fee Application: "Fee Application" means an application of a Professional Person under Sections 328, 330, 331 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Chapter 11 Case.

File, Filed, or Filing: "File," "filed," or "filing" means file, filed or filing with the clerk of the Bankruptcy Court or its authorized designee in the Chapter 11 Case.

Final Financing Order: "Final Financing Order" means the Final Order Authorizing Debtor to: (I) Maintain and Continue to Operate under the Purchase Agreement in Order to Sell Accounts Post-Petition to Seacoast and to Incur Credit from Seacoast Pursuant to 11 U.S.C. Section 363(b), (c), (f) and (m); (II) Grant Seacoast Adequate Protection in the Form of First priority Liens and Security Interests on Property of the Debtor's Estate Pursuant to 11 U.S.C. Sections 364(c), 364(d)(1), 364(e) and 507; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief, Nunc Pro Tunc dated February 6, 2023 [Doc. No. 87].

Final Order: "Final Order" means an order or a judgment which has not been reversed, stayed, modified or amended and as to which (i) the time to appeal or seek review, reargument, or rehearing has expired and no appeal or petition for certiorari, review, or rehearing is pending or (ii) its appeal, review, reargument, rehearing, or certiorari has been denied and the time to seek a further appeal, review, reargument, rehearing, or certiorari has expired , as a result of which such order or judgment has become final and nonappealable in accordance with applicable law.

Holder or Claimholder: "Holder" or "Claimholder" means any Entity that is the holder of a Claim, including but not limited to (a) a Claim that arose on or before the Petition Date, (b) a Claim against the Debtor's Estate of any kind specified in Section 502(g), Section 502(h) or Section 502(i) of the Bankruptcy Code, or (c) an Administrative Claim.

Impaired: When used with respect to any Claim, Interest or class, "impaired" has the same meaning as that contained in Section 1124 of the Bankruptcy Code.

Income Generated Taxes: "Income Generated Taxes" means all federal and state income taxes, FICA taxes, Medicare taxes, social security taxes, self-employment taxes, alternative minimum taxes, and other taxes owed on account of, and all other taxes on or measured by income, compensation, or benefits received by an employee.

Interest Holder: "Interest Holder" means any person or Entity holding an Equity Interest in the Debtor as of the Petition Date.

Litigation: "Litigation" includes, without limitation, the filing, commencement, continuation, and/or prosecution of motions, actions, lawsuits, or proceedings, or the pursuit of any Cause of Action, regardless of whether filed, initiated, commenced, or completed before or after the Effective Date. Without limiting the foregoing, "Litigation" also means and includes any matters or proceedings related to the administration of the Chapter 11 Case or the RWDY Distribution Trust.

Merchant Cash Advance Agreement or MCA Agreement: "Merchant Cash Advance Agreement" or "MCA Agreement" mean any agreement that a Merchant Cash Advance Claimant alleges to have been made between a MCA Claimant and the Debtor or any other agreement that a Merchant Cash Advance Claimant alleges to be the basis of a Claim against the Debtor.

Merchant Cash Advance Claimant or MCA Claimant: "Merchant Cash Advance Claimant" or "MCA Claimant" means and refers to each of the MCA Claimants that has filed a Claim, including Cannon Advance LLC d.b.a. Premier Funds [Claim 8], Cannon Advance LLC d.b.a. Premier Funds [Claim 9], Cannon Advance LLC d.b.a. Premier Funds US [Claim 12], GOAT Advance, LLC [Claim 14], Spin Capital LLC [Claim 15], Reliance Financial [Claim 16], MYNT Advance [17], Reserve Capital Management [18] and Slate Advance [19]. (The "MCA Claimants" do NOT include any RWDY Distribution Trust Beneficiaries.)

Merchant Cash Advance Claimant Claims: "Merchant Cash Advance Claimant Claims" means the claims filed in this Chapter 11 Case, which are identified and described as follows:

Claim Number 8 filed by Canon on March 24, 2023, and amended on April 25, 2024;
Claim Number 9 filed by Canon on March 24, 2023, and amended on April 25, 2024;
Claim Number 12 filed by Canon on March 29, 2023, and amended on April 25, 2024;
Claim Number 14 filed by Goat on March 31, 2023, and amended on April 29, 2024;
Claim Number 15 filed by Spin on March 31, 2023, and amended on April 29, 2024;

Claim Number 16 filed by Reliance on March 31, 2023, and amended on April 29, 2024;
Claim Number 17 filed by Mynt on March 31, 2023, and amended on April 29, 2024;
Claim Number 18 filed by Reserve on March 31, 2023, and amended on April 29, 2024; and
Claim Number 19 filed by Slate on March 31, 2023, and amended on April 29, 2024.

Monthly Distribution Amount: In the context of the RWDY Distribution Trust, "Monthly Distribution Amount" shall mean the aggregate amount of money to be transferred by the Reorganized Debtor to the RWDY Distribution Trust on a monthly basis which amount shall be equal to the amount required to pay the Class 4 Claim and the Unsecured Claim of the Internal Revenue Service. The Monthly Distribution Amount is $124,933.40.

New or Amended Organizational Documents: "New or Amended Organizational Documents" means any new or amended certificates or articles of incorporation, by-laws, stockholders' agreements, or other applicable formation and governance documents of the Reorganized Debtor, as applicable, the form of which shall be included in the Plan Supplement.

Net Cash Flow: "Net Cash Flow" means the Debtor's net revenues after operating expenses and secured debt service.

Net Profit: "Net Profit" shall mean, for purposes of Sections 5.4.4 and 5.5.2, *infra*, the amount which the Reorganized Debtor reports (or estimates it will report, as the case may be) on Line 28 of IRS Form 1120 for each year in which a distribution under such sections is due hereunder.

Order: "Order" means (a) an order or judgment of the Bankruptcy Court as entered on the docket for this Chapter 11 Case (b) an order or judgment of another Court that may exercise jurisdiction over the Chapter 11 Case, any proceedings in the Chapter 11 Case, any adversary proceeding related to the Chapter 11 Case, or any appeal taken or pending from any order or judgment with respect to the foregoing, and/or (c) any Court which exercises jurisdiction under 28 U.S.C. § 1334 and/or 28 U.S.C. § 157 in relation to the Chapter 11 Case.

Owen: "Owen" means Brian T. Owen.

Owen-Millican-Gibson Account: "Owen-Millican-Gibson Account" means the CPA Claims and Causes of Action as defined in the Compromise Agreement.

Petition Date: "Petition Date" means December 21, 2022.

Plan: "Plan" means the Plan proposed by the Debtor in this Chapter 11 Reorganization Case, either in its present form or as it may be amended or modified.

Plan Supplement: "Plan Supplement" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan, to be Filed by the Debtor in accordance with the

Order approving the Disclosure Statement or by such later date as may be approved by the Bankruptcy Court, and additional documents Filed with the Bankruptcy Court before the Effective Date as amendments to the Plan Supplement. The Plan Supplement shall be comprised of, among other documents, the following: (a) the Amended Organizational Documents; (b) the Assumed Executory Contract and Unexpired Lease List; (c) the Rejected Executory Contract and Unexpired Lease List; (d) any Supplemental Schedule of Retained Causes of Action and Claims; (e) Claims Objection Schedule; (f) the identity of the members of the Reorganized RWDY, Inc., board of directors and management for the Reorganized Debtor; and (g) ancillary documents, including without limitation, mortgages, security agreements, and indicia of perfection. Any reference to the Plan Supplement in the Plan shall include each of the documents identified above as (a) through (g). Notwithstanding the foregoing, the Debtor may amend the documents contained in, and exhibits to, the Plan Supplement through the Effective Date or as otherwise provided herein.

Priority Claim: "Priority Claim" means an Allowed Claim entitled to a priority under, inter alia, Section 507(a) of the Bankruptcy Code.

Priority Tax Claim: "Priority Tax Claim" means a Claim that is entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

Pro Rata: "Pro Rata" means proportionately so that the ratio of the amount of consideration distributed on account of a particular Allowed Claim to the amount of the Allowed Claim is the same as the ratio of the amount of consideration distributed on account of all Allowed Claims of the Class in which the particular Allowed Claim is included to the amount of all Allowed Claims of that Class.

Professional Claim: "Professional Claim" means a Claim that is filed by a Professional Person pursuant to Sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code.

Professional Claim Bar Date: "Professional Claim Bar Date" means the date that is sixty (60) days after the Effective Date.

Professional Person: "Professional Person" means any Entity retained or to be compensated pursuant to Sections 326, 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code.

Reorganized Debtor: "Reorganized Debtor" means the legal entity that shall survive the Debtor as of the Confirmation Date.

Related RWDY Claims: "Related RWDY Claims" means the Related RWDY Claims as defined in the Compromise Agreement.

Released Persons: "Released Persons" means each and all of the Released Persons as defined in the Compromise Agreement.

10

Respondents/Liable Parties: "Respondents/Liable Parties" means each and all of the Respondents/Liable Parties as defined in the Compromise Agreement. Notwithstanding anything to the contrary herein or in the Compromise Agreement, "Respondents/Liable Parties" neither means nor includes any person or entity who is a Released Person.

RWDY Account: "RWDY Account" means the RWDY Account as defined in the Compromise Agreement.

RWDY Case 20-10616: "RWDY Case 20-10616" means Bankruptcy Case No. 20-10616 filed by RWDY, Inc., on June 22, 2020 in the United States Bankruptcy Court for the Western District of Louisiana, Shreveport Division. In RWDY Case 20-10616, on January 21, 2021 the Court Confirmed Debtor's Plan of Reorganization [Docket No. 283].

RWDY Distribution Trust: "RWDY Distribution Trust" means the trust created through Confirmation of Debtor's Plan of Reorganization [Docket No. 283] in RWDY Case 20-10616. In accordance with § 6.6 of the plan confirmed in RWDY Case 20-10616, RWDY executed the Distribution Trust Agreement which formed the RWDY Distribution Trust, of which, Lucy G. Sikes serves as Distribution Trustee. A copy of the RWDY Distribution Trust Agreement is attached hereto as an Exhibit 2.

RWDY Distribution Trust Agreement: "RWDY Distribution Trust Agreement" means the RWDY Distribution Trust Agreement, a copy of which is attached hereto as Exhibit 2.

RWDY Litigation Trust: "RWDY Litigation Trust" means a trust formed by the MCA Claimants to receive and prosecute the Assigned Claims. "RWDY Litigation Trust" also means the trustee of the RWDY Litigation Trust.

Secured Claim: "Secured Claim" means a Claim of a Creditor arising on or before the Petition Date to the extent it is (a) secured by a lien on Collateral that is not void or avoidable under applicable state and federal law, including the Bankruptcy Code or (b) subject to set off under Section 553 of the Bankruptcy Code, limited in each case (a) to the extent of the value of said Creditor's interest in the Debtor's interests in the property or (b) the amount of the set off, as applicable; provided, however, that nothing herein shall prohibit a Secured Creditor from making the election provided in Sections 1111(b)(2) of the Bankruptcy Code.

Secured Creditor: "Secured Creditor" means any Creditor that is the Holder of a Secured Claim.

Settled Actions: "Settled Actions" means, collectively, (a) Claims Objections or any other action related to a Claim: and (b) any and all claims and Causes of Action that the Debtor or the Distribution Trustee could assert against any non-debtor party, which claims and Causes of Action shall be fully and finally released pursuant to the Plan subject to the Bankruptcy Code and Bankruptcy Rules.

Taxing Authorities: "Taxing Authorities" means the Internal Revenue Service, the Louisiana Department of Revenue, and any other state or local taxing authority.

Undetermined Claim: "Undetermined Claim " means a Claim that is (a) a Disputed Claim or Contested Claim; (b) a Claim arising through rejection of an executory contract or unexpired lease; (c) an undetermined Administrative Claim in respect of an application of a Professional Person; or (d) a Claim that is an Unliquidated Claim or a Contingent Claim.

Unliquidated Claim: "Unliquidated Claim" means any Claim that is listed in the Debtor's schedules as "unliquidated."

Unsecured Claim: "Unsecured Claim" means any Claim against the Debtor whatsoever, other than (a) a Secured Claim, or (b) a Claim that is entitled to priority pursuant to the Bankruptcy Code.

**2.3 Rules of Interpretation**: For purposes of this Plan, (i) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (ii) any reference in the Plan to an existing document or exhibit Filed or to be Filed means such document or exhibit as it may have been or may be amended, modified, or supplemented as permitted herein; (iii) the words "herein," "hereto" and "hereof" refer to the Plan in its entirety rather than to a particular portion of the Plan; and (iv) the rules of construction set forth in Section 502 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

Nothing in the Plan shall be interpreted as amending, modifying, or changing the terms of the Compromise Agreement. It is intended that the Compromise Agreement be incorporated into the Plan.

Whenever the context may require, any pronoun includes the corresponding masculine, feminine and neuter forms. All definitions set forth herein are deemed applicable whether the words, terms, or phrases defined are used herein in the singular or the plural, and correlative forms of defined words, terms, or phrases have corresponding meanings. Any verbs defined in one tense having the same meaning, except as to tense, in which such are used. Any terms that are defined as a noun and which are used in the form of a verb shall be construed with regard to the definition given to the term as defined herein, and vice versa.

The words "include," "includes," and "including" shall be deemed to be followed by the phrase "without limitation" and/or "and/or not limited to," whether or not so stated. The words "hereof," "herein," "hereunder," and words of similar import, when used in the Plan, refer to the Plan as a whole and not to any particular provision of the Plan. Unless expressly provided to the contrary, the word "or" is not exclusive. Unless the context otherwise requires, for example, a reference to a statute, references herein to Sections mean the Sections of the Plan. The Plan shall

be construed without regard to any presumption or rule requiring construction or interpretation against the party drafting an instrument or causing any instrument to be drafted.

All amounts of money or funds expressed in the Plan as Dollars or by the symbol "$" means such amount in the lawful currency of the United States.

**2.4 Nested Definitions**. Certain of the words, terms, and/or phrases defined in the Plan contain other words, terms, and/or phrases that are defined in the Plan. In any such instance, each word, term, and/or phrase that contains one or more other words, terms, and/or phrases that are defined in the Plan shall be interpreted based upon the inclusion of such defined words, terms, and/or phrases.

**2.5 Computation of Time**: In computing any period of time prescribed or allowed in this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**2.6 Exhibits and Plan Supplement**: All exhibits are incorporated into and are a part of the Plan as if set forth in full herein. Holders of Claims and Interests may obtain a copy of the Filed exhibits upon written request to the Debtor's Attorney, Robert W. Raley, Esq., 290 Benton Spur Road, Bossier City, LA 7111 or bankruptcy@robertraleylaw.com. Upon their Filing, the exhibits may be inspected in the office of the clerk of the Bankruptcy Court or at the Bankruptcy Court's CM/ECF or PACER website. Moreover, all pleadings, documents, exhibits or plan supplements referred to in this Plan may be viewed and printed by logging on to PACER at www.lawb.uscourts.gov.To obtain a password, you may register at http://pacer.psc.uscourts.gov or call PACER Service Center at 1-800-676-6856. The documents contained in the exhibits shall be approved by the Bankruptcy Court pursuant to the Confirmation Order. The Debtor expressly reserves the right to modify or make additions to or subtractions from any exhibit or to the Plan and to amend, modify or supplement any exhibit to the Plan in conformance with the provisions of this Plan, the Bankruptcy Code and Bankruptcy Rules.

**ARTICLE III**
**DESIGNATION OF CLASSES OF CLAIMS**

**3.1 Designation of Classes of Claims**: A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and is classified in a different Class to the extent that any remainder of the Claim qualifies within the description of such different Class. A Claim is in a particular Class only to the extent that the Claim is an Allowed Claim in that Class and has not been released or otherwise satisfied before the Effective Date.

**3.2 Unclassified Claims**:

(i) Allowed Administrative Claims (Unimpaired)

(ii) Allowed Priority Tax Claims (Unimpaired)

(iii) Allowed Insured Claims (Unimpaired)

**3.3 Classified Claims and Interests**:

| | |
|---|---|
| Class 1: | Secured Claim of the United States Small Business Administration (Impaired) |
| Class 2: | Secured Claim of Seacoast Business Funding (Impaired) |
| Class 3: | Secured Claim of Origin Bank (Impaired) |
| Class 4: | RWDY Distribution Trust Trustee Claim for Beneficiaries Other than Jason Brazzel (Impaired) |
| Class 5: | Jason Brazzel Claim (impaired) |
| Class 6: | MCA Compromise Claims (Unimpaired) |
| Class 7: | The U.S. Small Business Administration PPP CARES ACT Claim (Impaired) |
| Class 8: | Cudd Energy Services' Prepetition Compromised Claim (Impaired) |
| Class 9: | General Unsecured Claims (Impaired) |
| Class 10: | Equity Interest Holder (Impaired) |
| Class 11: | Payments to the United States Trustee (Unimpaired) |

**ARTICLE IV**
**PAYMENT OF ADMINISTRATIVE CLAIMS AND EXPENSES**
**AND CERTAIN PRIORITY CLAIMS AND TREATMENT OF INSURED CLAIMS**

**4.1 Administrative Claim Applications and Deadline**. Holders of Administrative Claims, including Professional Claims, other than: (a) Allowed Administrative Claims as of the Effective Date; (b) Administrative Claims that represent liabilities incurred on or after the Petition Date, but prior to the Effective Date, in the ordinary course of the Debtor's business which may be paid in the ordinary course of the Debtor's business without order of the Bankruptcy Court; and (c) Administrative Claims that constitute fees or charges assessed against the Estate under Chapter 123, Title 28, United States Code, by no later than the Administrative Claim Bar Bate must: (i) file an application with the Bankruptcy Court for allowance and request for payment of the Administrative Claim; and (ii) serve a copy of such application and request on the Debtor, the United States Trustee and all other parties entitled to notice thereof. Failure to file and serve such application and request by the Administrative Claim Bar Date or Professional Claim Bar Date,

14

whichever date is applicable, shall result in the Administrative Claim being forever barred and discharged. Except as specifically provided in the Plan, nothing in this Plan alters the law applicable to, and governing, the allowance and payment of Administrative Claims (including Professional Claims) under the Bankruptcy Code.

**4.2** **Treatment of Administrative Claims**: Except to the extent that the Debtor and the Holder of an Administrative Claim may otherwise agree in writing, Administrative Claims which are Allowed Claims prior to the Effective Date of the Plan shall be paid in full on or before the Effective Date of the Plan. Administrative Claims that become Allowed Claims after the Effective Date of the Plan shall be paid in full in cash on or before ten (10) business days following the date the Administrative Claim becomes an Allowed Claim by Final Order of the Bankruptcy Court.

**4.3** **Treatment of Professional Claims**: Professional Claims become Allowed the same as Administrative Claims in this Article (Section 4.1), and are treated the same as Administrative Claims in this Article (Section 4.2), except that: (i) a Professional Claim that has been previously Allowed on a final (not interim) basis by Final Order of the Bankruptcy Court is not subject to the requirement of filing an application as provided in Section 4.1; (ii) a Professional Claim that has been Allowed on an interim basis (not final) in whole or in part, shall with respect to being Allowed on a final basis, be subject to the filing of an application for its allowance as provided for in Section 4.1, but shall file such application by the Professional Claims Bar Date (as opposed to the Administrative Claim Bar Date) and shall be subject to such law, rules and procedures as would be otherwise applicable to the same outside of the this Plan; (iii) a Professional Claim that has been previously Allowed and paid on a final basis by Final Order of the Bankruptcy Court, but subject to disgorgement in the event of administrative insolvency, shall cease being subject to said disgorgement ten (10) days after the Professional Claims Bar Date unless, upon motion and notice, the Bankruptcy Court extends such period; (iv) any interim payments on account of a Professional Claim shall be credited against the payment of the final Allowed amount of such Professional Claim; and (v) any retainer provided on account of a Professional Claim may be credited and applied against the payment of the final Allowed amount of such Professional Claim once such Professional Claim is Allowed.

**4.4** **Post-Confirmation Fees and Expenses**: Upon the Confirmation Date, any requirement that Professionals comply with Bankruptcy Code sections 327 through 331 and 1103 in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtor may employ and pay any professional for services rendered or expenses incurred after the Confirmation Date in the ordinary course of business without any further notice to any party or action (including, without limitation, the need to file a fee application), order or approval of the Bankruptcy Court.

**4.5** **Priority Tax Claims**: Priority Tax Claims shall be paid by the Reorganized Debtor, up to the Allowed amount of such Claim, plus interest at the rate of 3% per annum accrued thereon on a quarterly basis on April 1, July 1, October 1 and January 1  of each year over a period not exceeding five (5) years after the date of the order for relief, as provided in Section 1129(a)(9)(C) of the Bankruptcy Code, commencing after the first full quarter following the Effective Date. If

the Reorganized Debtor fails to make a payment owed on an Allowed Priority Tax Claim pursuant to the terms of the Plan, it shall be deemed an Event of Default. In the event that an Event of Default occurs with regard to an Allowed Priority Tax Claim, the specific Holder of the Priority Tax Claim shall send a written notification, via first class mail, postage pre-paid, to the Reorganized Debtor of the Event of Default with a copy to Seacoast at 1880 N. Congress Ave., Suite 404, Boynton Beach, FL 33426 Attn: Mr. Jay Atkins. The Reorganized Debtor shall have thirty (30) days from the date the written notification is sent to cure the Event of Default in full or the Holder of the Allowed Priority Tax Claim may: (a) enforce the entire amount of its Claim; (b) exercise any and all rights and remedies under applicable non-bankruptcy law, and (c) seek such relief as may be appropriate in the Bankruptcy Court. The Reorganized Debtor's mailing address for purposes of sending this written notification is RWDY, Inc., 4717 Viking Drive, Bossier City, Louisiana 71111. Notices sent to the Reorganized Debtor by the Holder of an Allowed Priority Tax Claim shall be sent by first class mail, postage pre-paid.

**4.6 Unresolved Priority Tax Claims:**

No distribution shall be made on any Claim that has been filed asserting a priority under 11 U.S.C. § 507(a)(8) and which either (a) has been estimated at zero or (b) has not been Finally Allowed unless and until such claim is Finally Allowed. Notwithstanding the Confirmation of this Plan, the entry of a final decree, or the closing of this Chapter 11 Case, any Claim filed with an asserted priority under 11 U.S.C. § 507(a)(8) shall not be discharged and shall remain subject to determination through the Taxing Authority's audit and/or examination process, any subsequent conference with the Taxing Authority's manager, any mediation or alternative dispute resolution (ADR) procedure offered by the Taxing Authority and/or appeal.

Any statute(s) of limitations applicable to the Taxing Authority and/or for the Reorganized Debtor shall be deemed to be tolled and interrupted as of the Effective Date, including, but not limited to, any statute(s) of limitations applicable to audit, examination, assessment of the tax, conference, mediation, an ADR procedure, and/or appeal. The Taxing Authority's audit and/or examination shall be subject to and governed by the Claim that has been filed with an asserted priority under 11 U.S.C. § 507(a)(8). No further amendment shall be made to such Claim.

The Reorganized Debtor may appeal any assessment of the tax, including penalties, interest, or other amounts to any court or tribunal with jurisdiction over such appeal. Alternatively, the Reorganized Debtor may seek to reopen this Chapter 11 (if necessary) to file an adversary proceeding contesting any such assessment.

Notwithstanding the foregoing, if the Court has entered an Order on the Debtor's objection to Claim 5 filed at Docket No. 479 by which Claim 5 is Disallowed or if Claim 5 is otherwise Disallowed, no further audit, examination, or assessment of any tax or priority asserted by Claim 5 shall occur.

**4.7 Insured Claims**: Insured Claims shall be satisfied from the proceeds of any applicable Insurance Policy. Insured Claims include the Claims held by (i) Apache, (ii) H&P, (iii) Matthew

Dove, (iv) Mario Sanchez, (v) Johnny Aldana and Leonard Aldana, (vi) Rocky Gaspard, (vii) Carlos Franco, (viii) Trotter, (ix) Tanner Snider, (x) Manuel and Dora Gonzalez. Insured Claims are not classified and are not entitled to any distributions under the Plan; however, the relevant holder shall exhaust all remedies with respect to the applicable Insurance Policy. Any Insured Claim shall be deemed to be satisfied in full from the proceeds of the applicable Insurance Policy. Nothing in this paragraph shall constitute a waiver of any claim, right or cause of action the Debtor or the Estate may hold against any Person, including any insurer. Pursuant to section 524(e) of the Bankruptcy Code, nothing in the Plan shall release or discharge any insurer from any obligations to any Person under applicable law or any policy of insurance under which any Debtor is an insured or beneficiary or for purposes of any insurance recovery.

**4.8** **Inapplicability to Seacoast**: Prior to the Effective Date of the Plan, approval by the Court and payment of any fees and costs, including attorneys' fees incurred by Seacoast under the Post-Petition Agreements (as defined in section 5.2, below), and to the extent such fees and expenses may qualify as Professional Claims, this section is inapplicable, and instead the payment of any such fees and expenses incurred by Seacoast for which Seacoast is entitled to reimbursement by the Debtor under the Post-Petition Agreements (as defined in section 5.2., below), shall be governed exclusively by the procedures established under the Final Financing Order and the Post-Petition Agreements (as defined below).

## ARTICLE V
## TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

**5.1** **Secured Claim of the United States Small Business Administration (Class 1)**:

**5.1.1** Class 1 shall consist of the Allowed Secured Claim of the United States Small Business Administration.

**5.1.2** The United States Small Business Administration holds a secured claim in the allowed amount of $150,000.00. It will be paid in 320 monthly installment payments of $701.45 that includes interest at the rate of 3.25% per annum. The accrual of interest and the payments will commence on the 15th Day of the first month following the Plan's Effective Date.

**5.1.3** Retention of Liens: The United States Small Business Administration shall retain the lien it currently holds, and its lien shall remain in full force and effect until all payments required under the Plan have been paid in full.

**5.1.4** Impairment: The Class 1 Secured Claim of the United States Small Business Administration is Impaired under the Plan.

**5.2**     **Secured Claim of Seacoast Business Funding (Class 2):**

**5.2.1**   Class 2 shall consist of the Allowed Fully Secured Claim of Seacoast Business Funding, a Division of Seacoast National Bank ("Seacoast"). Seacoast holds a fully secured claim on the Petition Date in the amount of $18,617,531.50. The Seacoast Claim will be paid/treated in accordance with the Post-Petition Agreements in accordance with the following.

**5.2.2**   The Debtor and Seacoast operated prepetition pursuant to a Purchase Agreement entered into on or about November 21, 2018 as amended, supplemented and/or restated by that First Amendment to Purchase Agreement dated March 26, 2019, that Second Amendment to Purchase Agreement dated May 9, 2019, that Third Amendment to Purchase Agreement dated October 26, 2019, that Fourth Amendment to Purchase Agreement dated October 13, 2020, and that Fifth Amendment to Purchase Agreement dated September 1, 2022 (hereinafter collectively, the "Purchase Agreement"), and in addition, post-petition, have operated and continue to operate pursuant to the Purchase Agreement, as amended and/or supplemented by that Post-Petition Chapter 11 Bankruptcy Rider to Purchase Agreement (the "Bankruptcy Rider") (the Purchase Agreement and the Bankruptcy Rider shall hereinafter be referred to collectively as, the "Post-Petition Agreements"), as approved by the Bankruptcy Court pursuant to the entry of the Final Financing Order. Pursuant to the Final Financing Order, Seacoast, among all other rights as describe therein which remain unaltered by this plan, has a first priority duly perfected ownership interest in all Accounts that Seacoast purchases from the Debtor, post-petition, and Seacoast was granted a first priority perfected security interest and liens in all assets of the Debtor, including, but not limited to, all Accounts, including non-Purchased Accounts, which security interest secures any now existing and hereafter arising Post-Petition Obligations (as defined in the Final Financing Order) owing by the Debtor arising from the post-petition purchase advances made to the Debtor by Seacoast in accordance with the Post-Petition Agreements.

**5.2.3**   Pursuant to the Post-Petition Agreements, all prepetition Obligations and post-petition Obligations (as defined in the Final Financing Order) due to Seacoast must be repaid in full, without setoff, recoupment or deduction, "by no later than...the effective date of any confirmed Plan, unless Seacoast agrees to and consents, in writing, to other treatment under a Plan." Pursuant to the Post-Petition Agreements, the Debtor's failure to satisfy all monetary obligations owing to Seacoast by the effective date of the Plan constitutes an Event of Default under the Post-Petition Agreements.

**5.2.4**   The Debtor has notified Seacoast that since the Debtor does not anticipate having sufficient liquidity to pay all Obligations owing to Seacoast in full, it will be unable to repay the Post-Petition Obligations in full at confirmation. In order to induce Seacoast to consent to a Plan, the Debtor has agreed to preserve for the benefit of Seacoast, and to grant to Seacoast, each of the following rights post-confirmation under the Post-Petition Agreements, the Final Financing Order, and the following terms:

(i) All existing and hereafter arising rights and interests granted to Seacoast, and all monetary and non-monetary obligations owed and hereafter owing to Seacoast by the Debtor and the Reorganized Debtor under and in respect to the Post-Petition Agreements, and the Final Financing Order shall be and are hereby ratified, assumed, acknowledged, and approved without any modification or further Court approval. Accordingly, the Post-Petition Agreements and the Final Financing Order are fully preserved and shall remain in full force and effect post-confirmation and fully binding on the Debtor and the Reorganized Debtor and all parties-in-interest of the Debtor and the Reorganized Debtor.

(ii) Upon entry of a Confirmation Order, the Debtor and the Reorganized Debtor expressly assume all of the terms, duties and obligations under the Post-Petition Agreements and the Final Financing Order, except for any monetary obligations altered by the Plan. The Post-Petition Agreements shall be binding on and govern the factoring relationship between Seacoast and the Reorganized Debtor on and as of the Confirmation Date. Seacoast shall have no duty to comply with any terms contained in the Final Financing Order that no longer apply on or as of the Confirmation Date, including, but not limited to, the procedures contained in Sections 13 (establishing procedures for reimbursement of Seacoast's attorney's fees and costs), and 19 (solely as is relates to any requirement that Seacoast seek stay relief prior to exercising its default rights after an Event of Default under the Post-Petition Agreements and/or the Final Financing Order).

(iii) Nothing contained in any Plan (or any amended Plan) or any Confirmation Order approving a Plan (or any amended Plan), shall adversely effect, modify, enjoin, impair, or interfere with any of Seacoast's rights and/or the Debtor's and the Reorganized Debtor's now existing and hereafter arising monetary obligations and non-monetary obligations owing to Seacoast, under and with respect to the Post-Petition Agreements and the Final Financing Order and the terms of this Plan, including, without limitation: (a) Seacoast's first priority ownership interest in all Purchased Accounts (as defined by the Post-Petition Agreements) and Seacoast's duly perfected first priority security interest, liens and interests recognized or granted to Seacoast in the prepetition Collateral and post-petition Collateral (as defined in the Post-Petition Agreements and the Final Financing Order), including, but not limited to, any non-Purchased Accounts, general intangibles and all proceeds thereof, and the Reserve, which are fully preserved and which Collateral shall continue to secure, post-confirmation, any now existing and hereafter arising monetary and non-monetary obligations, including, but not limited to, any advances, over-advances, fees and/or financial accommodations made to, and due from the Debtor and the Reorganized Debtor, and/or (b) any rights that Seacoast has or may hereafter have in respect to any supporting obligations (as such term is defined in the Uniform Commercial Code), including any guarantor of the Obligations under the Post-Petition Agreements, and (c) any obligations and/or restrictions imposed on any person, including, any MCA Lender and any prepetition creditor and/or party-in-interest, including, but not limited to, Seacoast's exclusive rights to collect and retain payment directly from any account debtor of all Purchased Accounts and non-Purchased Accounts , and such rights and restrictions shall remain in effect and shall continue post-confirmation.

(iv) In the event the Debtor and/or the Reorganized Debtor defaults under the Post-Petition Agreements and/or the Plan, Seacoast shall be entitled to exercise and enforce all rights and remedies, under the and in respect to the Post-Petition Agreements, the Plan and applicable state law, free of any automatic stay under 11 U.S.C. § 362 or any injunction under 11 U.S.C. § 524(a), or otherwise. The Bankruptcy Court will retain non-exclusive, concurrent jurisdiction together with any state or federal court having subject matter and in personam jurisdiction over the subject matter and the parties as provided in the Post-Petition Agreements, to enforce to the terms of the Plan (or any amended Plan), and/or the Post-Petition Agreements between Seacoast and the Debtor, including the Reorganized Debtor. The Debtor and the Reorganized Debtor each waive any right to contest the jurisdiction of any such state or federal court. In the event of any conflict or inconsistency between this section and any section in the Plan, including Article XI below (Retention of Jurisdiction), this section shall control.

(vi) Notwithstanding anything to the contrary, in the event of an express conflict between the terms of the Final Financing Order on the one hand, and any Plan, including the Plan, including the Plan Supplement, the Confirmation Order, or any authorizing amendment or modification to the Plan, on the other hand, the Final Financing Order will control and as may be required by law, is incorporated into this Plan by reference. The Debtor's further acknowledges that Section 11.2 of the Plan (Exclusive Jurisdiction), Section 13.7 of the Plan (discharge of claims), Section 13.8 (discharge of debtor), Section 13.10 (injunctive relief), Section 8.4 (insofar as the right to object to claims) and Section 6.5 (revesting of assets to the Reorganized Debtor free and clear of liens, claims, etc.), are inapplicable to Seacoast.

(vii) After the Confirmation Date or Effective Date, whichever is earliest, the Debtor and Seacoast shall be entitled to modify the terms of the Post-Petition Agreements without having to obtain authorization from the Bankruptcy Court or a modification of this Plan, provided, however, that Seacoast and the Reorganized Debtor shall provide notice to the Distribution Trustee of any modification that would result in an immediate cession of the Monthly Distribution Amount payments to the RWDY Distribution Trust.

(viii) The Debtor acknowledges and agrees that the existence and operation of the RWDY Distribution Trust as provided under Article IX in the Plan and any of the rights and powers granted, transferred, delegated, or otherwise, to any person under the RWDY Distribution Trust, including, but not limited to, the Distribution Trustee and any beneficiary of the Trust, shall not adversely effect, modify, enjoin, impair, interfere with, or adversely impact any of Seacoast's rights and/or the Debtor's (and the Reorganized Debtor's) monetary and non-monetary obligations to Seacoast under and with respect to the Post-Petition Agreements and the Final Financing Order except as provided herein. The Distribution Trustee is neither a party to the Post-Petition Agreements, nor an intended third-party beneficiary, and the Distribution Trustee has no rights or standing under or with respect to the Post-Petition Agreements.

(ix) Upon notice by Seacoast to the Reorganized Debtor and the Distribution Trustee of the occurrence of any event which would be an Event of Default under the Post-Petition Agreements: (a) the Debtor's and the Reorganized Debtor's right to use any portion of any

purchase price advances received from Seacoast or any other sources of funds for the purpose of funding any Monthly Distribution Amounts to the RWDY Distribution Trust shall terminate, and (b) the Distribution Trustee shall not accept any further Monthly Distribution Amount from the Reorganized Debtor, unless and until such Event of Default is cured and, Seacoast issues a Notice withdrawing such notice of default ("Withdrawal Notice"). Notice of default, shall be validly given, made, or served, if in writing and sent by registered or certified mail, or by commercial courier or by registered email (e.g., rpost) to the address listed in section 13.11 of the Plan, below. If Seacoast, in its sole and absolute discretion, issues a Withdrawal Notice, the Reorganized Debtor shall re-commencing paying The Distribution Trustee the next Monthly Distribution Amount owing prior to a notice of default, payable the first day of the next calendar month following such Withdraw Notice, until such time as any subsequent notice of default notice is issued by Seacoast under this section.

(x) All Monthly Distribution Amounts which the Distribution Trustee receives prior to Seacoast's giving notice of an Event of Default as set forth in the preceding subparagraph (ix) shall be received by the Distribution Trustee free and clear of any claim or lien of Seacoast, and the Distribution Trustee may therefore retain, make disbursements from, or otherwise use such Monthly Distribution Amounts received by the Distribution Trustee prior to Seacoast's giving notice of an Event of Default to the Distribution Trustee as set forth in the preceding subparagraph (ix) pursuant to the terms of the RWDY Distribution Trust.

(xi) Should the Reorganized Debtor, or settlor, remit any Monthly Distribution Amount to the Distribution Trustee after Seacoast has given notice of an Event of Default as set forth in the preceding subparagraph (ix), the Distribution Trustee shall, as trustee to Seacoast, segregate and retain such funds, in trust, for the sole benefit of Seacoast, as sole beneficiary of any such Monthly Distribution Amount, shall not comingle any Monthly Distribution Amount with any other funds of the RWDY Distribution Trust, which shall at all times be subject to the security interest and lien of, Seacoast, and upon request by Seacoast, the Distribution Trustee will, upon request, turnover such funds to Seacoast.

(xii) In any and all events, the Distribution Trustee shall have no liability for funds disbursed in contravention of the preceding subparagraph (xi) unless and until a notice of an Event of Default and of Seacoast's intent to trigger the provisions stated in Plan Section 5.2.3.(IX) is received by the Distribution Trustee. The Distribution Trustee's Notice Address is set forth in section 13.11.

(xiv) In light of the foregoing, upon Confirmation of the Plan, the Reorganized Debtor and Seacoast shall be entitled to continue to conduct business pursuant to the terms of the Post-Petition Agreements; specifically, the Reorganized Debtor shall continue to be authorized to offer for sale to Seacoast Accounts and upon purchase by Seacoast such Accounts shall constitute Purchased Accounts, in exchange for which Seacoast will remit purchase price advances in accordance with and subject to the terms of the Post-Petition Agreements and this section of the Plan.

**5.2.5**  The Class 2 Claim of Seacoast Business Funding is Impaired under the Plan.

**5.3**  <u>Secured Claim of Origin Bank (Class 3)</u>:

**5.3.1**  Class 3 shall consist of the Allowed Secured Claim of Origin Bank related to Origin Bank credit card charges secured by a RWDY deposit account.

**5.3.2**  Origin Bank holds a Secured Claim in the allowed amount of $108.73. It will be paid in full on the 15th day of the first month following the Plan's Effective Date.

**5.3.3**  Retention of Liens: Origin Bank will retain the lien it currently holds, and its lien will remain in full force and effect until all payments to Origin Bank required under the Plan have been paid in full.

**5.3.4**  Impairment: The Class 3 Secured Claim of Origin Bank is Impaired under the Plan.

**5.4**  <u>Lucy Sikes Distribution Trustee Claim (Class 4)</u>:

**5.4.1**  The Class 4 Claimant is Lucy Sikes in her capacity as Trustee of the RWDY Distribution Trust, that is, the Distribution Trustee. The Claim, filed by the Distribution Trustee as Claim 5, for the balance owed to Distribution Trustee and the Distribution Trust consists of the amounts for which Claims were filed in RWDY Case 20-10616 and on account of which payments were made by RWDY, Inc. to the Distribution Trustee prior to the filing of this Chapter 11 Case, excluding the amount that was payable to Jason Brazzel without interest. The Beneficiaries and the amounts which the Beneficiaries of the RWDY Distribution Trust were entitled to receive as of the Petition Date were as follows:

| RWDY DISTRIBUTION TRUST BENEFICIARY BALANCES | | | |
|---|---|---|---|
| RWDY DISTRIBUTION TRUST BENEFICIARY | PRINCIPAL BALANCE | ACCRUED INTEREST | TOTAL PRINCIPAL AND INTEREST |
| EIN Cap, Inc. | $574,643.42 | $1,818.39 | $576,461.81 |
| Fox Capital Group, Inc. | $59,393.30 | $187.94 | $59,581.24 |
| Mr. Advance, LLC | $76,299.62 | $241.44 | $76,541.06 |
| Queen Funding, LLC | $275,974.47 | $873.29 | $276,847.76 |
| Tiger Capital Group LLC | $2,999,977.48 | $9,493.08 | $3,009,470.56 |
| Vernon Capital Group LLC | $1,889,502.83 | $5,979.11 | $1,895,481.94 |
| Tailored Fund Cap LLC | $1,941,962.78 | $6,145.12 | $1,948,107.90 |
| AXA Equitable Life Insurance | $2,260.24 | $7.15 | $2,267.39 |
| BDO USA, LLP | $349,193.47 | $1,104.98 | $350,298.45 |
| Blue Cross Blue Shield | $15,180.91 | $48.04 | $15,228.95 |
| Maureen Blackburn Jennings | $5,436.82 | $1,612.13 | $7,048.95 |

| | | |
|---|---|---|
| McDermott, Will & Emery | $23,758.93 | $75.18 | $23,834.11 |
| Everest Premier Ins Company | $320,271.94 | $953.34 | $321,225.28 |
| American Express | $1,364.18 | $4.32 | $1,368.50 |
| Louisiana Department of Revenue | $135.03 | $0.43 | $135.46 |
| Internal Revenue Service | $13,021.09 | $41.20 | $13,062.29 |
| NM Taxation and Revenue | $3.33 | $0.01 | $3.34 |
| **TOTALS** | **$8,548,379.84** | **$28,585.15** | **$8,576,964.99** |

Some of the Beneficiaries have filed a proof of claim separate from the proof of claim filed by the RWDY Distribution Trustee. Those claim numbers, the, Beneficiaries and the amounts for which they have filed Claims are as follows:

| Claim 1: | NM Taxation and Revenue Department | $ 29,727.50 |
|---|---|---|
| Claim 2: | American Express National Bank | $ 768.58 |
| Claim 3: | American Express National Bank | $ 644.26 |
| Claim 5-3 | Internal Revenue Service | $ 21,170.75 |
| Claim 7-1 | Tailored Fund Cap, LLC | $5,709,518.99 |
| Claim 13 | Everest Indemnity Insurance Company | $ 290,873.88 |

The Claim filed by the Distribution Trustee as Claim 11 and the amounts set forth in the table above, titled "RWDY DISTRIBUTION TRUST BENEFICIARY BALANCES," subsume and are comprehensive of Claims 2, 3, 7-1, and 13. Claims 2, 3, 7-1, and 13 shall be included in the Finally Allowed Claim of the Distribution Trustee with each of the Claimants for Claims 2, 3, 7-1, and 13 receiving the amounts set forth in the table above as distributions from the RWDY Distribution Trust and the Distribution Trustee. Claims 2, 3, 7-1, and 13 shall not be separately Allowed, either as Claims under Class 4 or as Claims in any other Class.

Claim 1 filed by the NM Taxation and Revenue Department is for $29,727.50, which includes a de minimis amount of $26.32 which was included in the claim filed by and allowed for the NM Taxation and Revenue Department in RWDY Case 20-10616. The amount of $26.32 included in Claim 1 shall be paid in the amount of $3.34 through the RWDY Distribution Trust by the Distribution Trustee and shall not be Allowed as Claims any other Class. The remainder of $22.98 of Claim 1 shall be Disallowed.

Claim 5 as amended on October 25, 2023, is in the total amount of $21,170.75, which includes an amount of $17,137.34 for which priority is claimed under 11 U.S.C. § 507(a)(8) and $4,033.41 as a general unsecured claim. Claim 5 shall be Finally Allowed as amended as an Allowed Priority Tax Claim in the amount of $17,137.34 and shall be Finally Allowed as amended as Unsecured Claim in the amount of $4,033.41. The priority amount of $17,137.34 shall be paid as an Unimpaired Unclassified Allowed Priority Tax Claims as set forth in Section 4.5. The unsecured amount of $4,033.41 shall be paid through the RWDY Distribution Trust as a Class 4 Claim.

The Claim, filed by the Distribution Trustee as Claim 11, shall be Finally Allowed as an Unsecured Claim in the amount of $8,580,998.40, which includes the principal amount of $8,552,413.52 ($8,548,379.84 + $4,033.41) and accrued interest as of December 21, 2022, in the amount of $28,585.15. The balance of $4,217,466.60 that was owed to Jason Brazzel as of the Petition Date and which was previously administered and distributed by the Distribution Trustee shall be Finally Allowed and paid as a Class 5 Claim as set forth hereinafter.

**5.4.2**    On June 22, 2020, RWDY, Inc. filed RWDY Case 20-10616. The Bankruptcy Court, confirmed RWDY's 2021 Plan by the 2021 Confirmation Order. [1] In accordance with § 6.6 of the 2021 Plan, RWDY executed the Distribution Trust Agreement which formed the RWDY Distribution Trust, of which, Lucy G. Sikes serves as Distribution Trustee.

**5.4.3**    The 2021 Plan required RWDY to remit the Monthly Distribution Amounts,[2] i.e., a sum "sufficient to enable the Distribution Trustee to make each of the monthly distributions required under the terms of the Plan, to the RWDY Distribution Trustee.[3] Specifically, under § 9.4 of the 2021 Plan, RWDY was "required to remit the Monthly Distribution Amounts on or before the 5th day of the first full calendar month after the Effective Date, and prior to the 5th day of each calendar month thereafter, until all Allowed Claims were paid in full under the terms of the 2021 Plan.[4] In turn, the 2021 Plan required the Distribution Trustee to distribute funds ((save and except the 2.5% of such Monthly Distribution Amount) to the Beneficiaries[5] in accordance with the provisions of the 2021 Plan."[6] In the 2021 Plan the aggregate Monthly Distribution Amount to be transferred by the Reorganized Debtor to the RWDY Distribution Trust on a monthly basis was equal to the amount required to pay the trust Beneficiaries' Finally Allowed Claims.

**5.4.4**    RWDY shall commence paying a Monthly Distribution Amount of $124,933.40 to the Distribution Trustee on or before the 5th day of the first full calendar month after the Effective Date in this Chapter 11 Case, and prior to the 5th day of each calendar month thereafter, until all Allowed Claims in Class 4 have been paid in full with interest on the principal amount thereof from the Effective Date at the rate of 5.25% per annum. In addition to the Monthly Distribution Amount, RWDY shall annually disburse to the Distribution Trustee an amount equal to fifteen percent (15%) of the Reorganized Debtor's Net Profit for each of full calendar year following the Effective Date until the Finally Allowed Claim filed by the Distribution Trustee as Claim 11 is paid in full. Such additional disbursement shall be made within thirty (30) days of the

---

[1] Case No. 20-10616, Doc. No. 283.

[2] Case No. 20-10616, Doc. No. 283, § 9.11.

[3] Case No. 20-10616, Doc. No. 283, § 2.2.

[4] Case No. 20-10616, Doc. No. 283, § 9.4.

[5] Case No. 20-10616, Doc. No. 283, § 2.2 (defining "Beneficiaries" as "in the context of the RWDY Distribution Trust shall mean those persons holding beneficial interests in the RWDY Distribution Trust, including but not limited to Allowed Claims in any of Classes 4, 5, and 8, herein.").

[6] Case No. 20-10616, Doc. No. 283, § 9.11 (alteration to original).

Reorganized Debtor's filing of its federal income tax return for each such year and, in the event of any estimated Net Profit, by no later than May 15th of the year in which the tax return is due. Should the Reorganized Debtor obtain an extension of the deadline for filing of its federal income tax return, the Reorganized Debtor shall, by no later than May 15th of the year in which the tax return is due, disburse to the Distribution Trustee an amount equal to fifteen percent (15%) of the Reorganized Debtor's estimated Net Profit for the subject year. Upon the filing of the tax return for the subject year, any such estimated Net Profit payments shall be subject to true-up, with any additional payment due within thirty (30) days of the date of filing of such return.  In the event that the Debtor overpaid by virtue of such estimated Net Profit payment, any amount overpaid shall carry over and reduce the amount due hereunder for the subsequent year. The final of such distribution to be made to the Distribution Trustee shall be in the amount, if any, necessary to pay the remaining balance owed on the Finally Allowed Claim filed by the Distribution Trustee as Claim 11, with any amount that remains from such fifteen percent (15%) of the Reorganized Debtor's estimated Net Profit to be distributed to the class 5 claimant, Jason Brazzel, as set forth in Section 5.5.2.

Such funds transferred and received by the Distribution Trustee for the RWDY Distribution Trust under this Section shall not be subject to reservation by the Distribution Trustee or payment of RWDY Distribution Trust expenses; provided that the Distribution Trustee shall be entitled to a commission for services provided to the RWDY Distribution Trust in the amount of 2.5% of such additional payments as set forth hereinafter. The RWDY Distribution Trust may make reasonable requests to verify and account for the calculation and payment of such fifteen percent (15%) of the Reorganized Debtor's Net Profit, including review of the Reorganized Debtor's calculation of its estimated Net Profit for the subject year and the Reorganized Debtor's tax return for the subject year.

**5.4.5**  The confirmation of this Plan will amend the provisions of the RWDY  Distribution Trust Agreement to the extent necessary to implement the provisions herein. In the event of any conflict between the language in the  RWDY  Distribution Trust Agreement and this Plan, this Plan shall control.

**5.4.6**   Nothing herein is or shall be deemed to be a waiver by the Distribution Trustee of any rights the Distribution Trustee has against Brian Owen (as guarantor under the 2021 Plan),[7] any collateral or security securing the Distribution Trustee's claim, or any third party.

**5.4.7**   Debtor's Plan includes the following provisions in the designated plan sections that are related to the RWDY Distribution Trust:

Plan Section 1.2: Payments to Creditors;

---

[7] Pursuant to § 6.13 of the Plan, Brian Owen agreed to execute a guarantee to "guarantee the payment of the obligations of the Reorganized Debtor to the RWDY Distribution Trust[.]" Case No. 20-10616, Doc. No. 283. In turn, Brian Owen and the RWDY Distribution Trust executed a Commercial Guaranty Agreement.

<u>Plan Section 2.2</u>: Definitions: Beneficiaries, Default, Distribution Trustee, Distributions under the Plan, Litigation, Monthly Distribution Amount, RWDY Distribution Trust, and Settled Actions;

<u>Plan Section 3.3</u>: Classified Claims and Interests;

<u>Plan Section 6.1</u>: Continued Operations of RWDY;

<u>Plan Section 8.5</u>: Creditors' Response to Objections;

<u>Plan Section 13.7</u>: Discharge of Claims; and

<u>Plan Section 13.10</u>: Injunctive Relief

A copy of the RWDY Distribution Trust Agreement is attached hereto as Exhibit 2.

*THE RWDY DISTRIBUTION TRUST WAS FORMED ON CONFIRMATION OF RWDY'S 2021 PLAN AND ALL PROVISIONS OF THE THAT CONFIRMATION ORDER, PLAN SUPPLEMENT AND THE RWDY DISTRIBUTION TRUST AGREEMENT ARE INCORPORATED HEREIN AND CAN AFFECT YOUR RIGHTS. CLAIMANTS ARE URGED TO READ THE RWDY DISTRIBUTION TRUST AGREEMENT IN ITS ENTIRETY IN DECIDING WHETHER TO VOTE FOR OR AGAINST THE PLAN. IN THIS BANKRUPTCY CASE, THE DISTRIBUTION TRUSTEE'S CLAIM WHOOLY SUBSUMES ANY CLAIMS OF THE RWDY DISTRIBUTION TRUST BENEFICARIES, AND THE RWDY DISTRIBUTION TRUST BENEFICARIES ARE LIMITED TO THE RIGHTS ACCORDED TO THEM AS BENEFICARIES UNDER THE RWDY DISTRIBUTION TRUST AS MODIFIED HEREIN.*

**5.4.9**    The Class 4 Claim is impaired under the Plan.

**5.5    <u>Jason Brazzel Claim (Class 5)</u>:**

**5.5.1**    Class 5 consists of the rights of Jason Brazzel to receive payment of the remaining balance of $4,217,466.60, on which distributions were previously made to him as a beneficiary of the RWDY Distribution Trust by the Distribution Trustee.

**5.5.2**    RWDY shall commence paying a monthly installment in the amount of $10,000.00 per month to Jason Brazzel on or before the 5th day of the first full calendar month after the Effective Date in this Chapter 11 Case, and prior to the 5th day of each calendar month thereafter, until the Allowed Claim in Class 4 has been paid in full with interest as set forth above. Upon completion of the payments required to be made to the RWDY Distribution Trust on account of the Class 4 Claim, and beginning on the 5th day of the first full calendar month after the full payment of the Class 4 Claim, RWDY shall commence paying a monthly installment in the amount of $125,000.00 to Jason Brazzel, which payments shall continue until the balance of $4,217,466.60 has been paid in full to Jason Brazzel without interest.

In addition to the Monthly Distribution Amount, after the Finally Allowed Claim filed by the Distribution Trustee as Claim 11 is paid in full, the amount equal to fifteen percent (15%) of the Reorganized Debtor's Net Profit for each of full calendar year following the Effective Date shall be disbursed to the Class 5 claimant until the aforementioned remaining balance of $4,217,466.60 is paid in full. During the first year in which the Finally Allowed Claim filed by the Distribution Trustee as Claim 11 is paid in full, such disbursement to the Class 5 claimant shall be in the amount remaining from the aforementioned fifteen percent (15%) of the Reorganized Debtor's Net Profit which has not been distributed to the Distribution Trustee. Thereafter, the amount equal to fifteen percent (15%) of the Reorganized Debtor's Net Profit for each subsequent year shall be distributed to the Class 5 claimant as necessary to pay the aforementioned remaining balance of $4,217,466.60 in full, with the final distribution to be in the amount that remains owing to the Class 5 claimant.

**5.5.3**  The confirmation of this Plan will amend the provisions of the RWDY  Distribution Trust Agreement to the extent necessary to implement the provisions herein.

**5.5.4**   The Class 5 Claim is impaired under the Plan.

**5.6**    **The Merchant Cash Advance Claimant Claims (Class 6)**:

**5.6.1**   Class 6 shall consist of the Merchant Cash Advance Claimant Claims.

**5.6.2**   The  Merchant Cash Advance Claimant Claims have been compromised and settled according with the authorization of the Bankruptcy Court as set forth in the Order Granting Authority to Enter Compromise entered in the Bankruptcy Case as Document No. 437.

**5.6.3**   According to the aforementioned Compromise and the Compromise Order, the effects of the Bankruptcy Court's approval of the Compromise Agreement are:

A.    Each of the Allowed MCA Claims is allowed in the Bankruptcy Case in the amount for which such claim was filed as a general unsecured;

B.    Claim Number 12 is disallowed in its entirety for the reason that it duplicates Claim Number 8 and Claim Number 9; Claim Number 12 shall not be an Allowed MCA Claim;

C.    The MCA Claimants have released all rights under, and shall cancel, any filed UCC-1 financing statement against RWDY, provided that the MCA Claimants are not required to release any rights against any other person or entity under any filed UCC-1 financing statement or cancel the effect of any filed UCC-1 financing statement against any person or entity other than RWDY;

D.     The MCA Claimants have waived and released any and all claims, rights, or causes of action, against the Released Persons and any and all claims, rights, or causes of action against RWDY's assets in respect to the RWDY Objections and Motions, Seacoast Objections and the Allowed MCA Claims ("MCA Release"), provided, however, that such waiver and release does not constitute a waiver or release of any claims, rights, or causes of action against any one or more of the Respondents/Liable Parties.

E.     RWDY and Seacoast have waived and released any and all claims, rights, or causes of action, against each of the MCA Claimants, along with all members, managers, agents, officers, directors, employees, personnel, attorneys, accountants, and insurers, of each of the MCA Claimants in respect to the RWDY Objections and Motions, Seacoast Objections and the Allowed MCA Claims ("RWDY- Seacoast Release");

F.     Prior to the filing of this Plan, RWDY has assigned the Assigned Claims to the RWDY Litigation Trust, including the rights to receive any proceeds thereof, in return for the MCA Release;

G.     The RWDY Litigation Trust has accepted the assignment of the Assigned Claims to the RWDY Litigation Trust, including the rights to receive any proceeds thereof, in return for the RWDY- Seacoast Release of the Allowed MCA Claims;

H.     The sole property that the MCA Claimants shall receive from RWDY as payment on, or otherwise on account of, the Allowed MCA Claims shall be the assignment by RWDY to the RWDY Litigation Trust of the Assigned Claims, including the rights to receive any proceeds thereof;

I.     The terms of the Compromise Agreement are hereby incorporated into this Chapter 11 plan;

J.     The terms of the Compromise Agreement shall have no adverse effect on Seacoast's rights, claims, interests or the treatment of Seacoast's rights, claims and interest arising prepetition, post-petition and/or post-confirmation under this Chapter 11 plan, or otherwise;

K.     The effects of the Compromise Agreement and the approval thereof is that the Allowed MCA Claims have been unconditionally and irrevocably released, and all claims of the MCA Claimants, including, but not limited to, the Allowed MCA Claims, claims for any monetary amounts, claims of any rights, interests, liens, or security interests in any property of RWDY or RWDY's bankruptcy estate, further including, but not limited to, claims against any accounts or receivables of RWDY, claims under and/or in respect to any MCA Agreement Documents, claims against RWDY, the bankruptcy estate and/or any property of RWDY or the bankruptcy

estate, and claims against Seacoast, are deemed unimpaired by this Chapter 11 plan;

L.      Notwithstanding that the Allowed MCA Claims shall be deemed to be unimpaired by this Chapter 11 plan, the MCA Claimants retain the right as parties in interest in the Bankruptcy Case to object to this Chapter 11 plan if and to the extent that this Chapter 11 plan would impair the MCA Claimants' rights under the Compromise Agreement; the RWDY Litigation Trust shall have no claim in the Bankruptcy Case; and

M.      By virtue of the assignment, RWDY's rights in respect to the Assigned Claims are owned by the RWDY Litigation Trust immediately upon the assignment thereof, with each of the MCA Claimants having the right to share in any proceeds thereof on a pro rata basis according to the amounts of the respective Allowed MCA Claims as beneficiaries of the RWDY Litigation Trust.

Under the assignment, the RWDY Litigation Trust has all of the claims, rights, and causes of action against the Respondents/Liable Parties and may seek the recovery of all damages. The assignment by RWDY to the RWDY Litigation Trust of the Assigned Claims is wholly without recourse and without any warranty whatsoever of any type or nature, and is without any representation or warranty whatsoever as to: (a) the present or future solvency of any of the Respondents/Liable Parties; (b) the ability of any of the Respondents/Liable Parties to pay any amount; (c) the lack of defenses of any of the Respondents/Liable Parties to such claims, rights, or causes of action; (d) the propriety of the institution of any proceedings on any of such claims, rights, or causes of action; (e) the existence, nature, and/or scope of such claims, rights, or causes of action that the MCA Claimants will have on account of such assignment; (f) the organization of any of the Respondents/Liable Parties; (g) the relationships of any of the Respondents/Liable Parties to one another; (h) whether or not any of the Respondents/Liable Parties has been properly identified; and/or (i) any fact or circumstance concerning such claims, rights, or causes of action or otherwise. The MCA Claimants are deemed to have duly and diligently considered the potential merits of the aforementioned claims, rights, or causes of action and the aforementioned matters. Each of the MCA Claimants has expressly acknowledged that it is not relying to any degree whatsoever upon RWDY or its attorneys or any other person with respect to any of such matters.

NOTHING IN THIS PLAN shall be read as limiting the assignment of RWDY's rights in respect to the Assigned Claims.

RWDY agreed to use commercially reasonable efforts to maintain and prosecute the CPA Claims and Causes of Action until the assignment thereof became effective and further agreed to cooperate with the RWDY Litigation Trust in its pursuit and prosecution of the Assigned Claims after the assignment became effective. To that end, RWDY agreed that it: (a) shall have waived and shall be deemed to have waived all evidentiary privileges regarding its communications and/or relationship with Respondents/Liable Parties, including, without limitation, all privileges under Louisiana Rule of Evidence 515 and La. R.S. 37:86, (b) to the extent necessary to render

such waiver effective, is deemed to have assigned any and all such evidentiary privileges to the RWDY Litigation Trust, and (c) is deemed to have objected to Respondents/Liable Parties or any other person or entity seeking to assert such privileges. RWDY also agreed to make it officers, employees, and records reasonably available to the RWDY Litigation Trust in connection with the prosecution of the Assigned Claims. In the event that RWDY breaches or does not fulfill any of its obligations under this paragraph, the RWDY Litigation Trust's sole remedy on account thereof is to obtain specific performance of RWDY's obligations under this paragraph to cooperate with the RWDY Litigation Trust in their pursuant and prosecution of the Assigned Claims, and the RWDY Litigation Trust shall have no other remedy on account thereof.

It is the intention of RWDY and the MCA Claimants that the RWDY Litigation Trust shall receive RWDY's claims, rights, and causes of action that are defined and described as the Assigned Claims, which includes the CPA Claims and Causes of Action and the Related RWDY Claims against all of the Respondents/Liable Parties, who include Owen. RWDY has a judgment against Owen in the full and true sum of $27,204,990.83, together with judicial interest on the aforesaid amount from the date of this judgment until paid in full, and all costs, which judgment was rendered in Adversary Proceeding No. 23AP-1003 in the Bankruptcy Court. The assignment of the Assigned Claims includes the assignment of RWDY's rights under the aforementioned judgment insofar as the judgment includes the amounts recoverable on the Assigned Claims. RWDY retained its rights under the aforementioned judgment to collect any and all other amounts that are not part of the Assigned Claims and that are owed by Owen under the aforementioned judgment, and RWDY retained the right to execute on the aforementioned judgment for its sole account and benefit.

**5.6.4**   As a result of the Compromise Agreement and the approval thereof, the Allowed MCA Claims are deemed to be unimpaired.

**5.6.5**   As a result of the Compromise Agreement and the approval thereof, no distribution or payment is required to be made or will be made on any of the Merchant Cash Advance Claimant Claims.

**5.7**   **The U.S. Small Business Administration PPP CARES ACT Claim (Class 7)**:

**5.7.1**   Class 7 consists of the U.S. Small Business Administration PPP CARES ACT Claim in the post-forgiveness amount of $34,872.00.

**5.7.2**   The Reorganized Debtor fully complied with the requirements for loan forgiveness pursuant to the Paycheck Protection Program under the CARES Act. As a result, the remaining post-forgiveness balance on the claim is $34,872.00. The claim will be paid in 60 monthly installment payments of $630.49 which includes interest at the rate of 3.25% per annum. The accrual of interest and the payments will commence on the 15th day of the first month following the Plan's Effective Date.

**5.7.3**   The Class 7 Claim is impaired under the Plan.

**5.8  Cudd Energy Services' Prepetition Compromised Claim (Class 8)**:

**5.8.1**   Class 8 shall consist of the Allowed Unsecured Litigation Claim held by Cudd Energy Services arising from a prepetition "Compromise Settlement Agreement and Mutual General Release". Under the agreement, the Debtor is to pay Cudd Energy Services $100,000.00 for a full release of all claims against RWDY.

**5.8.2**   The Settlement Claim, in the allowed amount of $100,000.00, will be paid in four equal installment payments of $25,000.00 each, without interest. The first installment payment will be made on the 15th day of the first month following the Plan's Effective Date. Subsequent installment payments will be made on the 15th day of each succeeding 90-day period thereafter.

**5.8.3**   The Class 7 Unsecured Settlement Claim held by Cudd Energy Services is Impaired under the Plan.

**5.9**   **General Unsecured Claims (Class 9)**:

**5.9.1**   Class 9 shall consist of all other Allowed Unsecured Claims against the Debtor not placed in any other class. Notwithstanding the foregoing, Class 9 shall not include any Claims 2, 3, 7-1, and 13, all of which are subsumed by the Distribution Trustee's Allowed Claim in Class 5. Class 9 shall include the unsecured amount of $29,674.86 which is included in Claim 1 filed by the NM Taxation and Revenue Department.

**5.9.2**   Creditors holding Allowed Class 9 General Unsecured Claims shall be paid 100% of their Allowed Class 9 Claims. Each holder of an Allowed Class 9 Claim shall be paid in full over 60 months with interest on the principal amount of the Allowed Claim accruing from the Effective Date at the rate of 5.25% per annum. Consecutive monthly payments shall be made on or before the 5th day of each calendar month beginning with the first full calendar month after the Effective Date.

**5.9.3**   The Class 9 General Unsecured Claims are Impaired under the Plan.

**5.10.1**  Class 10 shall consist of the sole Equity Interest Holder, Kenneth A. Lowery, who holds 100% of the issued and outstanding stock in Debtor. The Class 10 Equity Interest Holder will retain all of the issued and outstanding stock in Debtor. The Class 10 Equity Interest Holder's vote will not count towards votes tabulated for purposes of any possible cramdown under Section 1129(b).

**5.10.2**  The Class 10 Equity Interest Holder's Claim is Impaired under the Plan.

**5.11**   **Payments to the United States Trustee**: The Reorganized Debtor shall be responsible for the timely payment of United States Trustee quarterly fees incurred pursuant to 28 U.S.C. § 1930(a)(6). Any fees due as of the date of the Confirmation Hearing will be paid in full on the Effective Date of the Plan. After confirmation, the Reorganized Debtor shall pay United

States Trustee quarterly fees as they accrue until this case is closed by the Bankruptcy Court. The Reorganized Debtor shall file with the Bankruptcy Court and serve on the United States Trustee a quarterly financial report for each quarter (or portion thereof) that the case remains open, in a format prescribed by the United States Trustee.

## ARTICLE VI
## MEANS OF IMPLEMENTING THE PLAN

**6.1  Continued Operations of RWDY:** The Reorganized Debtor shall continue to operate its business following the Effective Date. The Reorganized Debtor shall only be required to timely fund and transfer to recipients' payments authorized under this Plan including the Debtor Distributions, Professional Fee Claims, including, but not limited to, the Debtor's and Reorganized Debtor's attorneys and other professionals, United States Trustee quarterly fees incurred pursuant to 28 U.S.C. 1930(a)(6), and the Monthly Distribution Amounts required to be distributed to the RWDY Distribution Trust.

**6.2  Post Effective Date Management**: The Reorganized Debtor shall continue to exist after the Effective Date in accordance with the applicable laws of the State of Texas, in which it was formed, for the purposes of operating its business and satisfying its obligations under the Plan. The Reorganized Debtor shall be owned by Kenneth A. Lowery who will serve as President and CEO of the company. For serving as President and CEO of the Reorganized Debtor, Kenneth A. Lowery shall initially be paid a fixed annual salary of $350,000.00 in monthly, or semi-monthly installments. For serving as Secretary/Treasurer and CFO of the Reorganized Debtor, Michael D. Bruce shall initially be paid a fixed annual salary of $200,000.00 in monthly, or semi-monthly installments. Kenneth A. Lowery and Michael D. Bruce will serve as directors of the Reorganized Debtor unless and until any of such directors resign, are incapacitate, or are replaced. They will not receive any additional compensation for that service. If upon consideration of the Reorganized Debtor's financial wellbeing, in Management's sound business judgment, to the extent that it is determined to be appropriate, in addition to their fixed salary the Reorganized Debtor may periodically pay bonuses to Kenneth A. Lowery and Michael D. Bruce.

**6.3  Corporate Action**: The entry of the Confirmation Order shall constitute authorization for the Reorganized Debtor to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and to consummate, the Plan on and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order, rule or regulation. The management of the Reorganized Debtor is authorized and directed to do all things and to execute and deliver all agreements, documents, instruments, notices and certificates as are contemplated by the Plan and to take all necessary actions required in connection therewith, in the name of and on behalf of the Debtor and Reorganized Debtor.

**6.4** **Documents**: All documents necessary for the implementation of this Plan shall be executed by all necessary parties in interest on the Effective Date, unless an earlier date is provided for a particular document or documents under this Plan. To the extent that the parties in interest herein are unable to agree on the form or substance of such documents, such unresolved issues shall be submitted to the Court for determination. Upon the Effective Date, or as soon as practicable thereafter, the Court shall have resolved said issues and all such documents shall be binding on the Debtor, the Creditors, and all other parties hereto.

**6.5** **Re-Vesting of Assets**: On the Effective Date, except as otherwise provided in this Plan, title to all of the Debtor's assets shall vest in the Reorganized Debtor free and clear of all liens, Claims, Causes of Action, interests, security interest and other encumbrances and without further order of the Bankruptcy Court. On and after the Effective Date, except as otherwise provided in this Plan, the Reorganized Debtor may operate its business and may use, acquire and dispose of its assets free of any restriction of the Bankruptcy Code.

**6.6** **Incorporation of Bankruptcy Rule 9019**: To the extent necessary to effectuate and implement the compromises and releases contained in the Plan, the Plan shall be deemed to constitute a motion under Bankruptcy Rule 9019 seeking the Bankruptcy Court's approval of all of the compromises contained herein.

**6.7** **Incorporation of Valuation Motion**: To the extent necessary to effectuate and implement the provisions of this Plan, the Plan shall be deemed to constitute a motion for valuation under the Bankruptcy Code, including to value any lien, security interest, or encumbrance treated by this Plan; provided, however, that nothing in this Plan shall alter any valuation ordered by Final Order of the Bankruptcy Court in the Chapter 11 Case.

**6.8** **Automatic Stay**: The automatic stay provided in Section 362 of the Bankruptcy Code, shall remain in effect through the Effective Date, unless otherwise specifically modified, annulled, or terminated by the Bankruptcy Court pursuant to a separate order, and shall terminate on the Effective Date.

**6.9** **Corporate Organizational Documents**: The Corporate Organizational Documents have been or will be amended on or prior to the Effective Date to prohibit the issuance of non-voting equity member interests to the extent prohibited by section 1123(a)(6) of the Bankruptcy Code, thereby satisfying section 1123(a)(6) of the Bankruptcy Code.

**6.10** **Rights Under 1129(b)**: If any impaired class votes to accept the Plan, but not all classes accept the Plan; the Debtor will seek confirmation under the cram down provisions of Section 1129(b) of the Bankruptcy Code and hereby gives notice of intent to invoke the cram down provisions of Section 1129(b) in that event.

**ARTICLE VII**
**PROVISIONS FOR THE ASSUMPTION AND REJECTION OF**
**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**7.1** <u>Assumption of the Master Service Agreements</u>: On the Effective Date, the Master Service Agreements between the Debtor and the counterparties to the Master Service Agreements shall be assumed. The Plan and the Confirmation Order shall constitute an order approving the assumption. The Master Service Agreements shall be retained by the Reorganized Debtor pursuant to the Plan.

**7.2** <u>General Assumption of All other Executory Contracts</u>: All other executory contracts and unexpired leases listed on the Debtor's Schedules, which are not expressly rejected on or before the Confirmation Date or not otherwise specifically treated in this Plan or in the Confirmation Order shall be deemed to have been assumed on the Confirmation Date. The Bankruptcy Court shall retain jurisdiction to effectuate any post-confirmation assumption and assignment of leases, and such assumption and assignments shall be performed pursuant to Section 365 of the Bankruptcy Code. Each prepetition executory contract and unexpired lease will be assumed only to the extent that any such contract or lease constitutes an executory contract or unexpired lease. Listing a contract or lease as an executory contract or unexpired lease will not constitute an admission by the Debtor, or the Debtor-in-Possession that such contract or lease is an executory contract or unexpired lease or that any Debtor, or the Debtor-in-Possession has any liability thereunder. The Confirmation Order shall constitute an Order of the Bankruptcy Court approving assumption under Section 365 of the Bankruptcy Code as of the Effective Date. The Reorganized Debtor shall continue to have all rights of assignment contained in 11 U.S.C. § 365 of any executory contract or unexpired lease following Confirmation of this Plan.

**7.3** <u>Cure of Defaults</u>: Unless otherwise provided for in the Plan, the Reorganized Debtor shall cure all defaults existing under any assumed Executory Contract pursuant to the provisions of Sections 1123(a)(5)(G) and 365(b) of the Bankruptcy Code, by paying the amount, if any, claimed by any party to such Executory Contract as set forth in a proof of claim, which shall be filed with the Court upon the earlier of (a) 30 days after express notice is given of the Debtor's intent to assume such Executory Contract or (b) within sixty (60) days after the Confirmation Date. Such proof of claim shall be titled "Assumption Cure Proof of Claim." Alternatively, the Reorganized Debtor may pay such amount as may be agreed upon between the Reorganized Debtor and any party to such Executory Contract, provided an Assumption Cure Proof of Claim is timely filed within thirty (30) days after the Confirmation Date. Payment of any amount claimed in an Assumption Cure Proof of Claim or otherwise agreed to shall be in full satisfaction, discharge and cure of all such defaults (including any other Claims filed by any such party as a result of such defaults), provided, however, that if the Reorganized Debtor files, within forty-five (45) days of the filing of an Assumption Proof of Claim, an objection in writing to the amount set forth, the Court shall determine the amount actually due and owing with respect to the defaults or shall approve the settlement of any such Claims. Payment of such Claims shall be made by the Reorganized Debtor on the later of: (a) ten (10) Business Days after the expiration of the forty-

five day (45) period for filing an objection to any Assumption Cure Proof of Claim filed pursuant to this section; or (b) when a timely objection is filed, within ten (10) Business Days after an order of the Court allowing such Claim becomes a Final Order.

**7.4   Claims for Damages**: Any Claims based upon rejection of an executory contract or unexpired lease under the Plan must be filed with the Bankruptcy Court and served on the Reorganized Debtor such that they are actually received within thirty (30) days of the entry of an order rejecting such contract or lease. Objections to any such proof of claim shall be filed not later than thirty (30) days after receipt of such claim. The Court shall determine any such objections, unless they are otherwise resolved. All Allowed Claims for rejection damages shall be treated as a Class 6 General Unsecured Claim. Any Claim not filed within such time will be forever barred from assertion against the Debtor or its Estate.

**7.5   Reservation of Rights**: The Debtor reserves the right to file applications for the assumption or rejection of any executory contract or unexpired lease at any time prior to ninety (90) days after the Confirmation Date.

**ARTICLE VIII**
**RESOLUTION OF UNDETERMINED CLAIMS**

**8.1   Standing**: Except as otherwise provided by prior order of the Court, the Debtor has standing to object to Claims and proofs of claim before the Claims Objection Deadline.

**8.2   Effect of Bar Date**: In accordance with Federal Rule of Bankruptcy Procedure 3003(c) any Creditor whose claim was not scheduled, or holds a Contingent Claim, Unliquidated Claim, or Disputed Claims or Contested Claims, and did not file a proof of claim before the Bar Date or thereafter as allowed by Order of the Court, shall not be treated as a Creditor with respect to such claim for purposes of voting or distribution.

**8.3   Amendments to Claims; Claims Filed after the Confirmation Date**: Except as otherwise provided in the Plan, and subject to the Bar Date, a Claim may not be amended after the Confirmation Date without prior authorization of the Bankruptcy Court. Except as otherwise provided in the Plan, any amended Claim filed with the Bankruptcy Court after the Confirmation Date shall be deemed disallowed in full and expunged without the need for any action by the Reorganized Debtor.

**8.4   Claims Objection Deadline**: Within ninety (90) days from the Effective Date, unless such date is extended by Order of the Court after notice and hearing, the Reorganized Debtor may file with the Court objections to Claims and interests and shall serve a copy of each such objection upon the Holder of the Claim or interest to which such objection pertains. Unless arising from an Avoidance Action, any proof of Claim filed after the Effective Date shall be of no force and effect and need not be objected to. Any Undetermined Claim may be litigated to Final Order. The Reorganized Debtor may compromise and settle any Undetermined Claim without the necessity of any further notice or approval of the Bankruptcy Court, and Bankruptcy Rule 9019

shall not apply to any settlement of an Undetermined Claim after the Effective Date; provided, however, no settlement shall in any way alter, vary, modify or otherwise adversely impact any of the rights provided to any party-in-interest contained in the Plan. Nothing in this Plan extends the Bar Date set in the Chapter 11 Case or grants any Creditor any greater rights with respect to a late-filed Claim than such Creditor otherwise has. Unless otherwise ordered by the Court, the Reorganized Debtor shall litigate to judgment, settle or withdraw objections to Contested Claims and/or Disputed Claims.

**8.5** **Creditor Response to Objection**: With respect to any objection to a Claim when such objection is filed after the Effective Date but otherwise in compliance with this Plan, the Creditor whose Claim was the subject of the objection must file with the Bankruptcy Court and serve a response to the objection upon the Reorganized Debtor or the RWDY Distribution Trust, as the case may be, no later than thirty (30) days from the date of service of any such objection. Failure to file and serve such a response within the thirty (30) days shall cause the Bankruptcy Court to enter a default judgment against the non-responding Creditor and thereby grant the relief requested in the objection without further notice to such Creditor. Any such objection shall contain prominent negative notice language informing the objected-to creditor of the same. This requirement notwithstanding: should the Objection to Claim be asserted in an Adversary Proceeding, the response will be superseded by any Scheduling Order or other Order fixing a response date applicable to the action.

**8.6** **No Payment Pending Allowance**: Notwithstanding any other provision in the Plan, if any portion of a Claim is disputed or is an Undetermined Claim, then no payment or distribution hereunder shall be made on account of any portion of such Claim unless and until such Disputed Claim or Contested Claim becomes an Allowed Claim.

**8.7** **Allowance of Claims**: At the time, and to the extent that an Undetermined Claim becomes an Allowed Claim, such Allowed Claim shall be entitled to such distributions provided under the Plan. Such distributions shall be made in the manner provided for by this Plan, the terms of any Final Order of the Court with respect to such Allowed Claim. If an allowed claim exceeded the scheduled amount, neither the interest rate nor the monthly payment amount shall be modified; instead, the term shall be sufficiently extended to fully pay the Allowed Claim.

**ARTICLE IX**
**RWDY DISTRIBUTION TRUST**

**9.1** **The RWDY Distribution Trust**. Subject to the provisions of this plan of reorganization and as amended thereby, The RWDY Distribution Trust created through Confirmation of Debtor's Plan of Reorganization [Docket No. 283] in RWDY Case 20-10616 shall continue in existence and operation pursuant to the Distribution Trust Agreement and the Distribution Trustee shall continue in the role established thereby.

**9.2 Purpose and Operation.** The RWDY Distribution Trust shall operate for the sole purpose of liquidating and distributing the Trust Assets, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

**9.3 Fees and Expenses of the RWDY Distribution Trust.** All fees, expenses, and costs of the RWDY Distribution Trust shall be paid from (i) the portion of the Monthly Distribution Amount paid by the Reorganized Debtor to the RWDY Distribution Trust designated under the definition of the term "Monthly Distribution Amount," and (ii) the Other Trust Assets. Neither the Debtor nor the Reorganized Debtor shall be responsible for any fees, expenses, and costs of the RWDY Distribution Trust other than through the transfers of the Initial Distribution Trust Funds and Other Trust Assets upon establishment of the RWDY Distribution Trust. The Distribution Trustee may retain counsel and other professionals under such fee arrangement and other terms and conditions as the Distribution Trustee determines to be appropriate, without necessity of Bankruptcy Court approval of such engagements or of payment of fees and expenses incurred by such counsel and other professionals.

**9.4 Assignment to and Funding of the RWDY Distribution Trust.** The Reorganized Debtor shall be required to make the Monthly Distribution Amounts on or before the 5th day of the first full calendar month after the Effective Date, and prior to the 5th day of each calendar month thereafter, until all Allowed Claims have been paid in full under the terms of the Plan. Trust Assets, and any proceeds thereof, shall be deemed to have been transferred to the RWDY Distribution Trust free and clear of all Claims and Equity Interests, Liens, charges and encumbrances, except as set forth in this Plan. The transfer(s) of the Trust Assets shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use, or other similar tax.

**9.5 Governance of the RWDY Distribution Trust.** The RWDY Distribution Trust shall be governed by the RWDY Distribution Trust Agreement and administered by the Distribution Trustee. Such RWDY Distribution Trust Agreement shall comply with, and such Distribution Trustee shall administer the RWDY Distribution Trust in accordance with, the advance ruling guidelines contained in Revenue Procedure 94-45, 1994-2 C.B. 684.

**9.6 Appointment of the Distribution Trustee.** Confirmation of the Plan shall constitute approval of the continuation of the appointment of Lucy G. Sikes as the Distribution Trustee of the RWDY Distribution Trust. In the event the Distribution Trustee dies, is terminated, or resigns for any reason, a successor Distribution Trustee shall be appointed in accordance with the terms of the RWDY Distribution Trust Agreement.

**9.7 Continuing Court Jurisdiction.** The Bankruptcy Court shall have continuing jurisdiction over matters related to the RWDY Distribution Trust in accordance with this Plan and as determined under applicable law.

**9.8 Role of the Distribution Trustee.** Except as otherwise provided herein and in the RWDY Distribution Trust Agreement, the Distribution Trustee shall hold the Trust Assets for the

benefit of the RWDY Distribution Trust Beneficiaries. The Distribution Trustee, without further order of the Bankruptcy Court, except as otherwise provided in the RWDY Distribution Trust Agreement, shall have the power and authority to (a) prosecute to judgment or settle, compromise, and resolve the Assigned Causes of Action, (b) calculate and make distributions to the RWDY Distribution Trust Beneficiaries of the proceeds of Trust Assets, (c) liquidate, transfer or otherwise dispose of the Trust Assets or any part thereof other than Cash or the Owen Note, the Owens Guaranty or any interest therein upon such terms as the Distribution Trustee determines to be necessary, appropriate or desirable, (d) terminate the RWDY Distribution Trust in accordance with the terms of the Plan and the RWDY Distribution Trust Agreement, (e) provide the beneficiaries, annually, with unaudited financial statements, and (f) sell, liquidate, dispose of or abandon Other Trust Assets excluding any Cash and/or the Owen Note. Except as otherwise provided in the RWDY Distribution Trust Agreement, the Distribution Trustee shall be the sole Person entitled to exercise the rights and duties with respect to the RWDY Distribution Trust and the Trust Assets.

**9.9 Nontransferability of RWDY Distribution Trust Interest.** The beneficial interests held by Beneficiaries in the RWDY Distribution Trust shall not be certificated and are not transferable.

**9.10 Compensation of the Distribution Trustee.** The Distribution Trustee shall be entitled to a commission for services provided to the RWDY Distribution Trust in the amount of 2.5% of all (a) Monthly Distribution Amounts transferred to the RWDY Distribution Trust, (b) all Cash recovered on the Assigned Causes of Action, the Owen Note, or any Other Trust Assets and distributed to the RWDY Distribution Trust Beneficiaries, (c) such funds transferred and received by the Distribution Trustee for the RWDY Distribution Trust under Section 5.4.4.

**9.11 Distributions from the RWDY Distribution Trust.** All distributions to the Beneficiaries shall be made in accordance with the terms of this Plan and the RWDY Distribution Trust Agreement by the Distribution Trustee as disbursing agent. The Distribution Trustee shall distribute Cash at periodic intervals, in accordance with the Plan and the RWDY Distribution Trust Agreement. The Distribution Trustee may reserve from the Other Trust Assets such amounts (i) as are reasonably necessary to meet contingent liabilities, (ii) to pay reasonable expenses (including, but not limited to, any taxes imposed on the RWDY Distribution Trust or in respect of the Trust Assets), and (iii) to satisfy other liabilities incurred by the RWDY Distribution Trust in accordance with this Plan or the RWDY Distribution Trust Agreement.

Should the Reorganized Debtor make Monthly Distribution Amount payment in any given month, the Distribution Trustee shall distribute to Beneficiaries, in accordance with the provisions of Article V of this Plan, supra, that portion of the Monthly Distribution Amount received (save and except the 2.5% additional portion of such Monthly Distribution Amount) to Beneficiaries. The Distribution Trustee may distribute to herself the 2.5% portion of the Monthly Distribution Amount received from the Reorganized Debtor as a commission pursuant to Section 9.10, *supra*.

Subject to the reserve determinations allowed within the first paragraph of this Section 9.11, but further subject to the limitations on use expressed herein, proceeds derived from the liquidation of Other Trust Assets shall be paid in the following order:

First, in payment of any outstanding fees, costs and expenses of the RWDY Distribution Trust.

Second, in payment of any outstanding but unpaid Administrative and Professional Fee Claims.

Third, in payment of Allowed Claims held by Beneficiaries. For purposes of this subsection, payments shall be made Pro Rata amongst all Beneficiaries, without regard to specific classification under this Plan, and based upon the then outstanding amount of each Beneficiary's Allowed Claim as a proportion of the whole of all Beneficiaries' outstanding Allowed Claims. Payment to Beneficiaries hereunder shall reduce the amount of the Beneficiaries' outstanding Allowed Claims, but shall not reduce or modify the amount of the Monthly Distribution Amount, nor shall the obligation of the Reorganized Debtor to timely remit the Monthly Distribution Amount to the RWDY Distribution Trust be delayed or suspended. The Reorganized Debtor's obligation to timely remit the Monthly Distribution Amount shall continue until such time as all Allowed Claims have been satisfied by the RWDY Distribution Trust in full according to the terms of this Plan and the RWDY Distribution Trust Agreement.

**9.12 Limitation of Distribution Trustee's Liability.** The Distribution Trustee shall not have any liability to any Beneficiary or to any Holder of a Claim for the consequences of her acts and omissions in the performance of duties under the Plan and RWDY Distribution Trust Agreement, except to the extent such consequences are caused by the Distribution Trustee's intentional and willful wrongdoing or gross negligence. The Distribution Trustee shall have no liability to any Beneficiary or any Holder of a Claim for the consequences of any act or omission that is approved or ratified by the Bankruptcy Court. The Distribution Trustee shall be deemed to have acted in good faith, and shall have no liability to any Beneficiary or the Holder of a Claim, for acting in reasonable reliance upon the advice or opinion of counsel or other professional person retained by the Distribution Trustee. Under no circumstances shall the Distribution Trustee be liable for actions as Distribution Trustee to any Beneficiary or Holder of a Claim or any other Person for an amount in excess of the amount that such Person was or would have been entitled to receive from the RWDY Distribution Trust. No claim may be made or instituted against the Distribution Trustee by any entity, including, but not limited to, any beneficiary, unless the making or institution of such claim is approved by the Reorganized Debtor, and, the Reorganized Debtor shall have no obligation to approve the making or institution of any such claim. The Reorganized Debtor confirms that the Distribution Trustee has faithfully performed her duties under the 2021 Plan and the RWDY Distribution Trust Agreement. During the pendency of this Bankruptcy Case, no claims, rights, or causes of action have been instituted or asserted against the Distribution Trustee and any and all such claims, rights, or causes of action that may have existed, if any, would not be barred by prescription.

**9.13 Privileges.** The attorney-client privilege, the attorney work product doctrine and any similar privilege against disclosure, and all other similar immunities, including all documents and confidential documents, including but not limited to confidential and/or privileged internal communications of the directors or officers of the Debtor and any Professionals, which in any way relate to or concern any Assigned Causes of Action and any Claims made against the Estate for which the RWDY Distribution Trust has the right to object to the allowance of same shall vest in the RWDY Distribution Trust upon creation. However, such privileges shall remain vested in the Debtor, and upon the Effective Date, the Reorganized Debtor, with regard to any matters not expressly stated in the foregoing sentence. Notwithstanding the foregoing, the Debtor and Reorganized Debtor shall allow reasonable access to their books and records, including electronically stored information, and information that is not subject to an attorney-client privilege, the attorney work product doctrine, or any similar privilege against disclosure, for purposes of allowing the RWDY Distribution Trust to assert any rights assigned to it in the Plan or the RWDY Distribution Trust.

**9.14 RWDY Distribution Trust Tax Treatment.** The RWDY Distribution Trust is intended to be treated for federal income tax purposes as a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), for the benefit of the Beneficiaries. The RWDY Distribution Trust shall be a "grantor trust" as defined in Section 671 of the Tax Code with each Beneficiary treated as a "grantor" of the RWDY Distribution Trust. For all U.S. federal income tax purposes, all parties shall treat the transfer of assets or Cash by the Debtor, the Reorganized Debtor, and/or Owen to the RWDY Distribution Trust for the benefit of the Beneficiaries' Claims, whether Allowed on or after the Effective Date, as (i) a transfer of the assets of the Debtor or Reorganized Debtor or Owen, as applicable, directly to the Beneficiaries, followed by (ii) the transfer by such persons to the RWDY Distribution Trust of such assets in exchange for beneficial interests in the RWDY Distribution Trust. Accordingly, the Beneficiaries, whether their Claims are Allowed on or after the Effective Date, shall be treated for federal income tax purposes as the grantors and owners of their respective shares of the applicable assets of the RWDY Distribution Trust.

**9.15 Dissolution of the RWDY Distribution Trust.** The Distribution Trustee and the RWDY Distribution Trust shall be discharged or dissolved, as the case may be, at the earlier time of (i) the Distribution Trustee determines, in her sole discretion, that the pursuit of Assigned Causes of Action are not likely to yield sufficient additional proceeds to justify further maintenance of the RWDY Distribution Trust, or (ii) all Distributions of Trust Assets required to be made by the Distribution Trustee under the Plan and RWDY Distribution Trust Agreement have been made; provided, however, that in no event shall the RWDY Distribution Trust be dissolved later than ten (10) years from the Effective Date unless the Bankruptcy Court, upon motion made, determines that a fixed period extension is necessary to facilitate or complete the recovery on and liquidation of the Trust Assets. Upon dissolution of the RWDY Distribution Trust, any remaining Trust Assets shall be distributed as follows:

A. If all Allowed Claims have been satisfied by the RWDY Distribution Trust in full according to the terms of this Plan and the RWDY Distribution Trust Agreement, then all remaining Trust Assets shall be distributed to the Reorganized Debtor; and

B.   If all Allowed Claims have not been satisfied by the RWDY Distribution Trust in full according to the terms of this Plan and the RWDY Distribution Trust Agreement, then all remaining Trust Assets shall be distributed to the Beneficiaries as described herein.

**9.16 Power & Obligations of the RWDY Distribution Trust.** The Distribution Trustee shall have the rights, powers and duties set forth in the RWDY Distribution Trust Agreement, which is incorporated herein by reference.

**9.17    Rights of Action.**

**9.17.1** In accordance with Section 1123(b)(3)(B) of the Bankruptcy Code, the Distribution Trustee shall have a right of action and standing to pursue and may pursue all Causes of Action relating to the Owen Note and the security therefor and/or the Assigned Causes of Action as defined in the 2021 Bankruptcy Plan. Any Distributions provided for in the Plan and the allowance of any Claim for the purpose of voting on the Plan are and shall be without prejudice to the rights of the RWDY Distribution Trust to pursue and prosecute any Assigned Causes of Action as reserved rights of action and without prejudice to (a) the right of action and standing of the Distribution Trustee to pursue all Claims and Causes of Action relating the Owen Note and the security therefor and/or the Assigned Causes of Action, or (b) the Reorganized Debtor's right of action and standing to pursue and prosecute any other Claims and Causes of Action, including, but not limited to, the Claims and Causes of Action described in Article XII, *infra,* other than the aforementioned Assigned Causes of Action. Except as otherwise set forth in the Plan, all Assigned Causes of Action and all Claims and Causes of Action described in Article XII, *infra,* shall survive confirmation of the Plan and the commencement and prosecution of any proceeding on account of such Assigned Causes of Action and all Claims and Causes of Action described in Article XII, *infra,* shall not be barred or limited by res judicata or any estoppel, whether judicial, equitable or otherwise. In reviewing the Plan and the Disclosure Statement, Creditors and other parties should consider that Claims and Causes of Action of the Debtor exist or may exist against them, and that, except as otherwise set forth in the Plan, the Plan preserves all Claims and Causes of Action of the Debtor, and that the Plan authorizes the Distribution Trustee to prosecute all Assigned Causes of Action and authorizes the Reorganized Debtor to prosecute all Causes of Action described in Article XII, *infra*.

**9.17.2**  The Distribution Trustee is specifically authorized to bring lawsuits in connection with the Owen Note, the security for the Owen Note, the dischargeability of the Owen Note,  the dischargeability of the Owen Guaranty, and the Assigned Causes of Action as defined in the 2021 Bankruptcy Plan in any forum or jurisdiction that the Distribution Trustee so chooses, subject to applicable principles of jurisdiction in such chosen forum.

**9.17.3**  Unless expressly released pursuant to the Plan or a Final Order of the Bankruptcy Court, the failure to identify a Person in this Plan shall not constitute a release of any Claims or Causes of Action (or Assigned Causes of Action) against such Person.

**9.17.4** The Claims and Causes of Action retained by the Debtor and the Assigned Causes of Action are outlined within Article XII, *infra*, of this Plan.

## ARTICLE X
## MODIFICATION OF THE PLAN

**10.1 Amendments Prior to Confirmation Date:** The Debtor may amend or modify the Plan prior to Confirmation, and the Plan, as amended or modified shall become the new Plan of Reorganization.

**10.2 Amendments After Confirmation Date**: The Debtor may modify the Plan before its substantial consummation, provided that the Plan, as modified, meets the requirements of the Bankruptcy Code, and the Court, after notice and hearing, confirms this Plan, as modified.

**10.3 Effect on Claims**: A Holder of a Claim that has accepted or rejected this Plan shall be deemed to have accepted or rejected, as the case may be, this Plan, as modified, unless, within the time fixed by the Court, such Holder changes its previous acceptance or rejection.

## ARTICLE XI
## RETENTION OF JURISDICTION

**11.1 Purposes**: Notwithstanding entry of the Confirmation Order, this Court shall retain jurisdiction over the Chapter 11 Case for the following purposes:

A. to determine any and all objections to the allowance of Claims or interests, both before and after the Confirmation Date, including any objections to the classification of any Claim or interest;

B. to determine any and all applications for fees and expenses authorized to be paid or reimbursed in accordance with Section 503(b) of the Bankruptcy Code or this Plan;

C. to determine any and all pending applications for the assumption or rejection of executory contracts or for the rejection or assumption and assignment, as the case may be, of unexpired leases to which the Debtor is a party or with respect to which it may be liable; to hear and determine any actions to void or terminate unexpired contracts or leases; and to hear and determine and, if need be, to liquidate any and all claims arising therefrom;

D. to hear and determine any and all actions initiated by the Reorganized Debtor whether by motion, complaint or otherwise;

E. to determine any and all applications, motions, adversary proceedings and contested matters pending before the Court on the Confirmation Date or filed or instituted after the Confirmation Date;

F.  to modify this Plan, the Disclosure Statement or any document created in connection with this Plan or remedy any defect or omission or reconcile any inconsistency in any Order of the Court, this Plan, the Disclosure Statement or any document created in connection with this Plan, in such manner as may be necessary to carry out the purposes and effects of this Plan to the extent authorized by the Bankruptcy Code;

G.  to ensure that the Distributions under the Plan are accomplished in accordance with the provisions of this Plan;

H.  to allow, disallow, determine, liquidate or estimate any Claim or interest and to enter or enforce any Order requiring the filing of any such Claim or interest before a particular date;

I.  to enter such Orders as may be necessary to interpret, enforce, administer, consummate, implement and effectuate the operative provisions of this Plan, the Confirmation Order and all documents and agreements provided for herein or therein or executed pursuant hereto or thereto including, without limitation, entering appropriate Orders to protect the Debtor from creditor actions;

J.  to hear any other matter not inconsistent with Chapter 11 of the Bankruptcy Code;

K.  to enter and implement such Orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked or vacated;

L.  to determine such other matters as may arise in connection with this Plan, the Disclosure Statement or the Confirmation Order;

M.  to enforce all Orders, judgments, injunctions, and rulings entered in connection with the Chapter 11 Case;

N.  to determine all issues relating to the Claims of the IRS, and other taxing authorities, state or federal;

O.  to determine any avoidance actions brought pursuant to the provisions of the Bankruptcy Code; and

P.  to enter a Final Order and final decree closing the Chapter 11 Case.

**11.2 Exclusive Jurisdiction**: The Court shall have exclusive jurisdiction to resolve all controversies, suits and disputes that may arise in connection with the interpretation, enforcement, consummation, implementation or administration of this Plan, the Confirmation Order, the Disclosure Statement or the RWDY Distribution Trust and **all entities shall be enjoined from commencing any legal or equitable action or proceeding with respect to such matters in any other court or administrative or regulatory body**. This provision shall not alter or change the provisions of Section 5.2.3(iv) addressing the Seacoast Claim.

**11.3** <u>Abstention</u>: If the Court abstains from exercising jurisdiction or is otherwise without jurisdiction over any matter arising out of the Chapter 11 Case, including the matters set forth in Article XI shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

**ARTICLE XII**
**CLAIMS AND CAUSES OF ACTION**

**12.1** <u>Retention and Enforcement of Causes of Action</u>: All Causes of Action retained by the Debtor, All Assigned Causes of Action, all Causes of Action that could have been brought by a Creditor on behalf of the Debtor, and all Causes of Action created by the Bankruptcy Code not waived or released under the Plan or by Final Order entered by the Bankruptcy Court, excluding any right, claims, actions or Causes of Action that has been released or have been deemed to have been waived due to a lack of compliance with any deadline established by an order entered by the Bankruptcy Court, may be pursued by the Debtor. The Debtor shall have the exclusive right to settle or compromise all such Causes of Action.

**12.2** Causes of Action retained by the Debtor shall include all claims, rights, and causes of action that have not been assigned to the RWDY Litigation Trust.

**12.3** <u>Retention and Enforcement of Specific Claims</u>: Confirmation of the Plan shall operate to preserve and retain the Debtor's and Reorganized Debtor's right, right of action, and standing to pursue Causes of Action preserved and retained by the Debtor shall include the following:

A. Any and all claims against Owen, including, but not limited to, the judgment and the right to collect the judgment entered on April 12, 2023 by the Court favor of plaintiff, RWDY, INC, and against defendant, Brian T. Owen, in the sum of $27,204,990.83, excluding, however, the amount thereof which is part of the Assigned Claims;

B. Any and all other claims, rights, and Causes of Action which the Debtor and/or the estate holds against any Entity for payment due on account of services performed for and goods provided to or for the benefit of such Entity by the Debtor or by any persons or entity whose services the Debtor paid for;

C. Any and all other claims, rights, and Causes of Action to recover money or property from customers, vendors and/or employees whether based on contract or tort, including without limitation all rights pursuant to Section 502(d) of the Bankruptcy Code to assert and prosecute any Causes of Action of the Debtor against creditors solely for the purpose of establishing that a creditor's Claim against the Estate must be disallowed for failure to repay an avoidable transfer; and

D. Any and all objections to claims filed in this bankruptcy case; and

E. Any and all equitable subordination Causes of Action arising under Section 510 of the Bankruptcy Code or other applicable law.

The foregoing may be supplemented by the Plan Supplement.

**12.4 <u>Enforcement of Claims by the Reorganized Debtor</u>:** To the extent that it is administratively convenient and beneficial to the Reorganized Debtor, it may commence and enforce actions on Assigned Causes of Action post-confirmation.

**ARTICLE XIII**
**<u>GENERAL PROVISIONS</u>**

**13.1 <u>Certain Rights Unaffected</u>**: Except as otherwise provided herein, any rights or obligations which the Debtor's Creditors may have among themselves as to their respective Claims or the relative priority or subordination thereof are unaffected by this Plan.

**13.2 <u>Headings</u>**: The article and section headings used in this Plan are inserted for convenience and reference only and neither constitute a part of this Plan nor in any manner affect the terms, provisions or interpretations of this Plan.

**13.3 <u>Severability</u>**: Except as otherwise provided herein, If any term or provision in this Plan is determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other term or provision of this Plan.

**13.4 <u>Governing Law</u>**: Except to the extent that the Bankruptcy Code is applicable, the Texas Business Organizations Code and the provisions of the Uniform Commercial Code as same is in effect in the State of Texas shall apply to those matters that affect the Debtor, the Reorganized Debtor, and the property of the Debtor and/or the Reorganized Debtor to which such laws are applicable. In all other instances, the rights and obligations arising under this Plan and any documents, agreements and instruments executed in connection with this Plan (except to the extent such documents, agreements and instruments designate otherwise) shall be governed by, and construed and enforced in accordance with, the laws of the State of Louisiana.

**13.5 <u>Conditions Precedent to Effective Date of the Plan</u>**. The occurrence of the Effective Date of the Plan is subject to satisfaction of the following conditions precedent: (a) the Confirmation Order is a Final Order and (b) all other documents effectuating the Plan shall have been executed and delivered by the parties thereto, and all conditions to the effectiveness of such documents shall have been satisfied or waived as provided therein. The Effective Date of the Plan may be the date of the entry of an order confirming the Plan if no appeal thereof is thereafter timely filed.

      **13.6 <u>Successors and Assigns</u>**: Except as provided herein, the rights and obligations of any Entity named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Entity.

      **13.7 <u>Discharge of Claims</u>**: Except as otherwise provided herein or in the Confirmation Order, the rights afforded in the Plan and the payments and distributions to be made hereunder and under the RWDY Distribution Trust Agreement shall discharge all existing debts and Claims of any kind, nature, or description whatsoever against the Debtor and the Reorganized Debtor or any of its assets or properties to the extent permitted by Section 1141 of the Bankruptcy Code; upon the Effective Date, all existing Claims against the Debtor and the Reorganized Debtor shall be, and shall be deemed to be discharged; and all Holders of Claims shall be precluded from asserting against the Reorganized Debtor or any of its assets or properties, any other or further Claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such Holder filed a proof of claim.

      **13.8 <u>Discharge of Debtor</u>**: Except as otherwise provided herein or in the Confirmation Order, any consideration Distributed under the Plan shall be in exchange for and in complete satisfaction, discharge, and release of all Claims of any nature whatsoever against the Debtor or any of its assets or properties; and except as otherwise provided herein, upon the Effective Date, the Debtor shall be deemed discharged and released to the extent permitted by Section 1141 of the Bankruptcy Code from any and all Claims, including but not limited to demands and liabilities that arose before the Effective Date, whether or not (a) a proof of claim based upon such debt is filed or deemed filed under Section 501 of the Bankruptcy Code; (b) a Claim based upon such debt is allowed under Section 502 of the Bankruptcy Code; or (c) the Holder of the Claim based upon such debt has accepted the Plan. Except as provided herein, the Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtor. Except as provided herein, pursuant to Section 524 of the Bankruptcy Code, such discharge shall void any judgment against the Debtor at any time obtained to the extent it relates to a Claim discharged, and operates as an injunction against the prosecution of any action against the Debtor or the property of the Debtor, to the extent it relates to a Claim discharged.

      **13.9 <u>Exculpations</u>**: NONE

      **13.10 <u>INJUNCTIVE RELIEF</u>**: EXCEPT AS PROVIDED HEREIN, ON AND AFTER THE CONFIRMATION DATE, ALL CREDITORS AND PERSONS ACTING IN CONCERT WITH THEM ARE ENJOINED AND RESTRAINED PURSUANT TO SECTION 105 OF THE CODE FROM TAKING ANY ACTION TO COLLECT OR ENFORCE ANY CLAIM DIRECTLY OR INDIRECTLY AGAINST THE REORGANIZED DEBTOR AND THE RWDY DISTRIBUTION TRUST IN ANY MANNER INCONSISTENT WITH THE TERMS CONTAINED IN THE PLAN. THE DISCHARGE GRANTED BY THIS PLAN VOIDS ANY JUDGMENT AT ANY TIME OBTAINED WITH RESPECT TO ANY DEBT DISCHARGED.

*THE EXCLUSIVE REMEDY FOR PAYMENT OF ANY CLAIM OR DEBT AGAINST THE DEBTOR WHICH IS ADDRESSED IN THIS PLAN SHALL BE PAYMENT OR DISTRIBUTION UNDER AND FROM THE PLAN, THE RWDY DISTRIBUTION TRUST AGREEMENT, AND/OR THE RWDY DISTRIBUTION TRUST. ALL PARTIES HOLDING CLAIMS, WHETHER ALLOWED OR DISALLOWED, ARE ENJOINED FROM TAKING ANY OTHER ACTION, INCLUDING, BUT NOT LIMITED TO, ANY ACTION TO PROSECUTE OR COLLECT ANY DEBT OR CLAIM AGAINST THE DEBTOR OR AGAINST ANY PROPERTY OF THE DEBTOR.*

**13.11** <u>**Notices.**</u> Notices required to be given hereunder shall be given at the following addresses for the following parties:

To the Debtor or Reorganized Debtor:

> RWDY, Inc.
> 4717 Viking Drive
> Bossier City, LA 71111
> <u>lowery@rwdyinc.com</u>
>
> With a copy to:
> Robert W. Raley, Esq.
> 290 Benton Spur Rd.
> Bossier City, LA 71111
> <u>rwr@robertraleylaw.com</u>
>
> and
>
> Curtis R. Shelton
> P.O. Box 1764
> Shreveport, LA 71166-1764
> <u>Curtisshelton@arklatexlaw.com</u>

To the Distribution Trustee:

> Lucy G. Sikes
> Post Office Box 52545
> Lafayette, LA 70505-2545
> <u>Lucygsikes1@gmail.com</u>

Notice shall be effective upon the earlier of (a) the time that any notice is sent via e-mail, or (b) actual receipt of such notice by the party to whom such notice is given, or (c) five (5) days after being deposited in the United States mail as shown by the United States Postal Service's postmark or by a receipt from the United States Postal Service, with such notice being properly addressed with adequate first-class postage thereon.

Dated: November 13, 2024        RWDY INC., Debtor and Debtor in Possession

By: /s/ Kenneth A Lowery
President


Respectfully Submitted,

ROBERT W. RALEY ESQ.

By: /s/ Robert W. Raley
Robert W. Raley, La. Bar #11082
290 Benton Spur Road
Bossier City, LA 71111
Telephone: 318-747-2230
rwr@robertraleylaw.com
Attorney for the Debtor

AYRES, SHELTON, WILLIAMS, BENSON & PAINE, LLC

By: Curtis R. Shelton
Curtis R. Shelton
La. Bar Roll No. 17137
Suite 1400, Regions Tower
3333 Texas Street (71101)
P.O. Box 1764
Shreveport, LA 71166-1764
Telephone: (318) 227-3500
Facsimile: (318) 227-3806
E-mail: curtisshelton@awsw-law.com
Attorneys for the Debtor